EXHIBIT A

--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097
**(Cite as: 2009 WL 4062105 (C.A.8 (Mo.)))**

**H**

United States Court of Appeals,
Eighth Circuit.
Jeremy BRADEN, Appellant,
v.
WAL-MART STORES, INC.; Stanley Gault; Betsy
Sanders; Don Soderquist; Jose Villareal; Stephen R.
Hunter; Debbie Davie Campbell, Appellees.
Secretary of Labor, Amicus on Behalf of Appellant;
ERISA Industry Committee; Chamber of Com-
merce; American Benefits Council, Amici on Be-
half of Appellees.
No. 08-3798.

Submitted: Sept. 24, 2009.
Filed: Nov. 25, 2009.

**Background:** Employee brought putative class ac-
tion against employer and various executives in-
volved in management of employee retirement plan
alleging they violated fiduciary duties imposed by
Employee Retirement Income Security Act
(ERISA). The United States District Court for the
Western District of Missouri, Gary A. Fenner, J.,
590 F.Supp.2d 1159, granted defendants' motion for
dismissal. Employee appealed.

**Holdings:** The Court of Appeals, Murphy, Circuit
Judge, held that:
(1) employee had Article III standing;
(2) participant stated a claim for violation of fidu-
ciary duties of prudence and loyalty imposed by
ERISA;
(3) participant stated a claim for breach of ERISA
imposed fiduciary duties of loyalty and disclosure;
and
(4) participant stated a claim for breach of ERISA
imposed fiduciary duty barring direct or indirect
furnishing of services between plan and party in in-
terest.

Reversed and remanded.

West Headnotes

**[1] Federal Civil Procedure 170A ⬅️103.2**

170A Federal Civil Procedure
   170AII Parties
     170AII(A) In General
      170Ak103.1 Standing
        170Ak103.2 k. In General; Injury or
Interest. Most Cited Cases
The doctrine of standing limits the jurisdiction of
federal courts to those disputes which are appropri-
ately resolved through the judicial process.

**[2] Federal Civil Procedure 170A ⬅️103.3**

170A Federal Civil Procedure
   170AII Parties
     170AII(A) In General
      170Ak103.1 Standing
        170Ak103.3 k. Causation; Redressabil-
ity. Most Cited Cases

**Federal Courts 170B ⬅️12.1**

170B Federal Courts
   170BI Jurisdiction and Powers in General
     170BI(A) In General
      170Bk12 Case or Controversy Require-
ment
        170Bk12.1 k. In General. Most Cited
Cases
The heart of standing is the principle that in order
to invoke the power of a federal court, a plaintiff
must present a case or controversy within the mean-
ing of Article III of the Constitution; this irredu-
cible constitutional minimum of standing requires a
showing of injury in fact to the plaintiff that is
fairly traceable to the challenged action of the de-
fendant, and likely to be redressed by a favorable
decision. U.S.C.A. Const. Art. 3, § 1 et seq.

**[3] Federal Civil Procedure 170A ⬅️103.2**

170A Federal Civil Procedure
   170AII Parties
     170AII(A) In General

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097
**(Cite as: 2009 WL 4062105 (C.A.8 (Mo.)))**

170Ak103.1 Standing
170Ak103.2 k. In General; Injury or Interest. Most Cited Cases
"Injury in fact," for purposes of Article III standing, is an invasion of a legally cognizable right; whether a plaintiff has shown such an injury often turns on the nature and source of the claim asserted. U.S.C.A. Const. Art. 3, § 1 et seq.

**[4] Action 13 🗝️13**

13 Action
131 Grounds and Conditions Precedent
13k13 k. Persons Entitled to Sue. Most Cited Cases

**Federal Civil Procedure 170A 🗝️103.2**

170A Federal Civil Procedure
170AII Parties
170AII(A) In General
170Ak103.1 Standing
170Ak103.2 k. In General; Injury or Interest. Most Cited Cases

**Federal Civil Procedure 170A 🗝️103.4**

170A Federal Civil Procedure
170AII Parties
170AII(A) In General
170Ak103.1 Standing
170Ak103.4 k. Rights of Third Parties or Public. Most Cited Cases
Constitutional standing is only a threshold inquiry, and so long as Article III is satisfied, persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others. U.S.C.A. Const. Art. 3, § 1 et seq.

**[5] Labor and Employment 231H 🗝️646**

231H Labor and Employment
231HVII Pension and Benefit Plans
231HVII(K) Actions
231HVII(K)3 Actions to Enforce Stat-

utory or Fiduciary Duties
231Hk646 k. Parties in General; Standing. Most Cited Cases
Participant who alleged actual injury to his own employment investment plan had Article III standing to bring claim against employer and various executives for alleged violations of fiduciary duties under Employee Retirement Income Security Act (ERISA) on behalf of entire plan, and relief would not necessarily be limited to period in which participant personally suffered injury; ERISA provision allowing for claims for breach of fiduciary duty allowed for suit brought by a participant in representative capacity on behalf of plan as whole and available remedies protected the entire plan. Employee Retirement Income Security Act of 1974, §§ 409, 502(a)(2), 29 U.S.C.A. §§ 1109, 1132(a)(2).

**[6] Labor and Employment 231H 🗝️647**

231H Labor and Employment
231HVII Pension and Benefit Plans
231HVII(K) Actions
231HVII(K)3 Actions to Enforce Statutory or Fiduciary Duties
231Hk647 k. Action on Behalf of Plan or as Individual. Most Cited Cases
Suit under ERISA provision authorizing plan participants to bring actions on behalf of a plan to recover for violations of the obligations of plan fiduciaries is brought in a representative capacity on behalf of the plan as a whole, and remedies under that provision protect the entire plan. Employee Retirement Income Security Act of 1974, §§ 409, 502(a)(2), 29 U.S.C.A. §§ 1109, 1132(a)(2).

**[7] Federal Civil Procedure 170A 🗝️1772**

170A Federal Civil Procedure
170AXI Dismissal
170AXI(B) Involuntary Dismissal
170AXI(B)3 Pleading, Defects In, in General
170Ak1772 k. Insufficiency in General. Most Cited Cases

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097
**(Cite as: 2009 WL 4062105 (C.A.8 (Mo.)))**

**Federal Civil Procedure 170A ⮞1835**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)5 Proceedings
            170Ak1827 Determination
               170Ak1835 k. Matters Deemed Admitted; Acceptance as True of Allegations in Complaint. Most Cited Cases
To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[8] Federal Civil Procedure 170A ⮞1772**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)3 Pleading, Defects In, in General
            170Ak1772 k. Insufficiency in General. Most Cited Cases
The plausibility standard, for complaint to survive motion to dismiss for failure to state a claim, requires a plaintiff to show at the pleading stage that success on the merits is more than a sheer possibility; it is not, however, a probability requirement. Fed.Rules Civ.Proc.Rule 12(b)(6). 28 U.S.C.A.

**[9] Federal Civil Procedure 170A ⮞1772**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)3 Pleading, Defects In, in General
            170Ak1772 k. Insufficiency in General. Most Cited Cases
A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[10] Federal Civil Procedure 170A ⮞673**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(B) Complaint
         170AVII(B)1 In General
            170Ak673 k. Claim for Relief in General. Most Cited Cases
A complaint states a plausible claim for relief if its factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

**[11] Federal Civil Procedure 170A ⮞1829**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)5 Proceedings
            170Ak1827 Determination
               170Ak1829 k. Construction of Pleadings. Most Cited Cases
Evaluation of a complaint upon a motion to dismiss is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

**[12] Labor and Employment 231H ⮞488**

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(C) Fiduciaries and Trustees
         231Hk487 Investments and Expenditures
            231Hk488 k. In General. Most Cited Cases
Participant's allegations that employer and various executives involved in management of employee retirement plan failed to pursue possibility of obtaining institutional class shares of mutual funds, but instead offered only retail class shares which charged significantly higher fees than institutional shares, that funds offered charged fees from which participants derived no benefit, and that plans chosen benefited trustee at expense of participants stated a claim for violation of fiduciary duties of prudence and loyalty imposed by ERISA. Employ-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097
**(Cite as: 2009 WL 4062105 (C.A.8 (Mo.)))**

ee Retirement Income Security Act of 1974, § 404(a)(1), 29 U.S.C.A. § 1104(a)(1).

**[13] Labor and Employment 231H ☞475**

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(C) Fiduciaries and Trustees
         231Hk475 k. Duties in General. Most Cited Cases
In order to state a claim under ERISA provision creating fiduciary duty of prudence and loyalty, a plaintiff must make a prima facie showing that the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the plan. Employee Retirement Income Security Act of 1974, § 404, 29 U.S.C.A. § 1104.

**[14] Labor and Employment 231H ☞477**

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(C) Fiduciaries and Trustees
         231Hk477 k. Prudent Person Standard. Most Cited Cases
Prudent person standard under ERISA provision creating fiduciary duty of prudence and loyalty is an objective standard that focuses on the fiduciary's conduct preceding the challenged decision. Employee Retirement Income Security Act of 1974, § 404(a)(1), 29 U.S.C.A. § 1104(a)(1).

**[15] Labor and Employment 231H ☞477**

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(C) Fiduciaries and Trustees
         231Hk477 k. Prudent Person Standard. Most Cited Cases
In evaluating whether a fiduciary has acted prudently under ERISA provision creating fiduciary duty of prudence and loyalty, the Court of Appeals focuses on the process by which it makes its decisions rather than the results of those decisions. Employee Retirement Income Security Act of 1974, § 404(a)(1), 29 U.S.C.A. § 1104(a)(1).

**[16] Federal Civil Procedure 170A ☞1829**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)5 Proceedings
            170Ak1827 Determination
               170Ak1829 k. Construction of Pleadings. Most Cited Cases
On a motion to dismiss for failure to state a claim, inferences are to be drawn in favor of the non-moving party. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[17] Federal Civil Procedure 170A ☞673**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(B) Complaint
         170AVII(B)1 In General
            170Ak673 k. Claim for Relief in General. Most Cited Cases
Short and plain statement pleading requirement does not require a plaintiff to plead specific facts explaining precisely how the defendant's conduct was unlawful; rather, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled give the defendant fair notice of what the claim is and the grounds upon which it rests and allows the court to draw the reasonable inference that the plaintiff is entitled to relief. Fed.Rules Civ.Proc.Rule 8, 28 U.S.C.A.

**[18] Labor and Employment 231H ☞475**

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(C) Fiduciaries and Trustees
         231Hk475 k. Duties in General. Most Cited Cases

**Labor and Employment 231H ☞482**

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(C) Fiduciaries and Trustees
         231Hk479 Notice and Disclosure Re-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097
**(Cite as: 2009 WL 4062105 (C.A.8 (Mo.)))**

quirements
        231Hk482 k. Misrepresentations or
Omissions in General. Most Cited Cases
The ERISA imposed duty of loyalty requires fiduciaries to deal fairly and honestly with all plan members and it is a breach of this duty affirmatively to mislead a participant or beneficiary. Employee Retirement Income Security Act of 1974, § 404(a)(1), 29 U.S.C.A. § 1104(a)(1).

**[19] Labor and Employment 231H ⚛482**

231H Labor and Employment
    231HVII Pension and Benefit Plans
       231HVII(C) Fiduciaries and Trustees
          231Hk479 Notice and Disclosure Requirements
            231Hk482 k. Misrepresentations or
Omissions in General. Most Cited Cases
Participant's allegations that employer and various executives involved in management of employee retirement plan failed to disclose complete and accurate material information about the plan funds and fees associated with funds and process by which funds were selected stated a claim for breach of ERISA imposed fiduciary duties of loyalty and disclosure; participant claimed plan funds charged higher fees than comparable funds, that employer had access to more cost effective institutional shares, that employer and executives did not select or evaluate funds on basis of fees they charged, and that revenue sharing payments to trustee were not disclosed. Employee Retirement Income Security Act of 1974, §§ 101, 404(a)(1), 29 U.S.C.A. §§ 1021, 1104(a)(1).

**[20] Labor and Employment 231H ⚛482**

231H Labor and Employment
    231HVII Pension and Benefit Plans
       231HVII(C) Fiduciaries and Trustees
          231Hk479 Notice and Disclosure Requirements
            231Hk482 k. Misrepresentations or
Omissions in General. Most Cited Cases
Information is material under ERISA provisions

creating fiduciary duty of loyalty and disclosure if there is a substantial likelihood that nondisclosure would mislead a reasonable employee in the process of making an adequately informed decision regarding benefits to which she might be entitled. Employee Retirement Income Security Act of 1974, §§ 101, 404(a)(1), 29 U.S.C.A. §§ 1021, 1104(a)(1).

**[21] Labor and Employment 231H ⚛482**

231H Labor and Employment
    231HVII Pension and Benefit Plans
       231HVII(C) Fiduciaries and Trustees
          231Hk479 Notice and Disclosure Requirements
            231Hk482 k. Misrepresentations or
Omissions in General. Most Cited Cases
Materiality under ERISA provisions creating fiduciary duty of loyalty and disclosure is a fact intensive issue which can be decided as a matter of law only if no reasonable trier of fact could disagree. Employee Retirement Income Security Act of 1974, §§ 101, 404(a)(1), 29 U.S.C.A. §§ 1021, 1104(a)(1).

**[22] Labor and Employment 231H ⚛493**

231H Labor and Employment
    231HVII Pension and Benefit Plans
       231HVII(C) Fiduciaries and Trustees
          231Hk487 Investments and Expenditures
            231Hk493 k. Prohibited Transactions;
Parties in Interest. Most Cited Cases
Participant's allegations that employer and various executives involved in management of employee retirement plan caused plan to enter into arrangement with trustee under which trustee received undisclosed amounts of revenue sharing payments in exchange for services rendered to plan stated a claim for breach of ERISA imposed fiduciary duty barring direct or indirect furnishing of services between plan and party in interest. Employee Retirement Income Security Act of 1974, § 406(a)(1)(C), 29 U.S.C.A. § 1106(a)(1)(C).

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097

**(Cite as: 2009 WL 4062105 (C.A.8 (Mo.)))**

**[23] Federal Civil Procedure 170A ⊄677**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(B) Complaint
         170AVII(B)1 In General
            170Ak677 k. Anticipating Defenses.
Most Cited Cases
A plaintiff need not plead facts responsive to an af-
firmative defense before it is raised.

**[24] Labor and Employment 231H ⊄654**

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(K) Actions
         231HVII(K)3 Actions to Enforce Stat-
utory or Fiduciary Duties
            231Hk652 Evidence
               231Hk654 k. Presumptions and
Burden of Proof. Most Cited Cases
In an action alleging violation of ERISA imposed
fiduciary duty barring transactions deemed likely to
injure the pension plan, the burden properly lies
with defendants to show that revenue sharing pay-
ments were reasonable under the statutory excep-
tion to the duty. Employee Retirement Income Se-
curity Act of 1974, §§ 406(a)(1), 408(b)(2), 29
U.S.C.A. §§ 1106(a)(1), 1108(b)(2).

**[25] Statutes 361 ⊄228**

361 Statutes
   361VI Construction and Operation
      361VI(A) General Rules of Construction
         361k228 k. Provisos, Exceptions, and
Saving Clauses. Most Cited Cases
It is a general rule of statutory construction that the
burden of proving justification or exemption under
a special exception to the prohibitions of a statute
generally rests on one who claims its benefits.

**[26] Federal Courts 170B ⊄611**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(D) Presentation and Reservation in

Lower Court of Grounds of Review
         170BVIII(D)1 Issues and Questions in
Lower Court
            170Bk611 k. Necessity of Presentation
in General. Most Cited Cases
Ordinarily, the Court of Appeals does not decide is-
sues that the district court did not adjudicate.

Derek W. Loeser, argued, Seattle, WA, Lynn Lin-
coln Sarko, Michael Woerner, Gretchen Freeman
Cappio, Gretchen S. Obrist, Benjamin Gould,
Seattle, WA; Gregory W. Aleshire, and William R.
Robb, Springfield, MO, on the brief, for appellant.

Robin Springberg Parry, argued, Washington, DC,
on Behalf Amicus, Secretary of Labor.

Paul J. Ondrasik, Jr., argued, Washington, DC, Wil-
liam C. Martucci, Kristen A. Page, Kansas City,
MO, Morgan D. Godgson, Eric G. Serron, Wash-
ington, DC, on the brief, for appellees.

Janet M. Jacobson, Robin S. Conrad, Shane B.
Kawka, John M. Vine, Thomas L. Cubbage, III,
Washington, DC, for Amici on Behalf of appellees.

Before MURPHY, BRIGHT, and RILEY, Circuit
Judges.

MURPHY, Circuit Judge.

**\*1** Jeremy Braden, an employee of Wal-Mart and
participant in its employee retirement plan (Plan),
brought this putative class action against appellees-
Wal-Mart and various executives involved in the
management of the Plan. Braden alleges that they
violated fiduciary duties imposed by the Employee
Retirement Income Security Act (ERISA). Ap-
pellees moved for dismissal under Federal Rules of
Civil Procedure 12(b)(1) and 12(b)(6). The district
court granted the motion, concluding that Braden
lacked constitutional standing to assert claims
based on breaches of fiduciary duty prior to the
date he first contributed to the Plan and that he oth-
erwise failed to state any plausible claim upon
which relief could be granted.[FN1] Braden timely

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097
**(Cite as: 2009 WL 4062105 (C.A.8 (Mo.)))**

appealed. We reverse and remand for further pro-
ceedings.

### I.

Wal-Mart's "Profit Sharing and 401(k) Plan" is an
"employee pension benefit plan" covered by
ERISA. 29 U.S.C. § 1002(2)(A). It is also an
"individual account plan," 29 U.S.C. § 1002(34),
establishing an individual profit sharing and 401(k)
account for each participating employee. Wal-Mart
is the Plan's sponsor and administrator under 29
U.S.C. § 1002(16). Merrill Lynch & Co., Inc. is the
Plan's trustee, holding its assets in trust and provid-
ing various administrative services necessary to the
maintenance of participants' accounts.

At the end of 2007, the Plan had over one million
participants and nearly $10 billion in assets. Indi-
vidual participants directed investment of the assets
in their Plan accounts by selecting from a menu of
investment options. During the period relevant to
Braden's claims, the available options included ten
mutual funds, a common/collective trust, Wal-Mart
common stock, and a stable value fund. These op-
tions were selected by Wal-Mart's Retirement Plans
Committee, the Plan's named fiduciary and the en-
tity responsible for the operation, investment
policy, and administration of the Plan.

Jeremy Braden began working for Wal-Mart in
May 2002. He became eligible to participate in the
Plan in June 2003 and made his first contribution
on October 31, 2003. He continued his employment
with Wal-Mart and his participation in the Plan
throughout the period relevant to this appeal.

Braden filed his complaint on March 27, 2008, al-
leging five causes of action against Wal-Mart and
the individual appellees, executives serving on or
responsible for overseeing the Retirement Plans
Committee.[FN2] The gravamen of the complaint is
that appellees failed adequately to evaluate the in-
vestment options included in the Plan. It alleges
that the process by which the mutual funds were se-

lected was tainted by appellees' failure to consider
trustee Merrill Lynch's interest in including funds
that shared their fees with the trustee. The result of
these failures, according to Braden, is that some or
all of the investment options included in the Plan
charge excessive fees. He estimates that these fees
have unnecessarily cost the Plan some $60 million
over the past six years and will continue to waste
approximately $20 million per year.

**\*2** Braden alleges extensive facts in support of
these claims. He claims that Wal-Mart's retirement
plan is relatively large and that plans of such size
have substantial bargaining power in the highly
competitive 401(k) marketplace. As a result, plans
such as Wal-Mart's can obtain institutional shares
of mutual funds, which, Braden claims, are signific-
antly cheaper than the retail shares generally
offered to individual investors. Nonetheless, he al-
leges that the Plan only offers retail class shares to
participants. Braden also avers that seven of the ten
funds charge 12b-1 fees, which he alleges are used
to benefit the fund companies but not Plan parti-
cipants.

Braden alleges further that the relatively high fees
charged by the Plan funds cannot be justified by
greater returns on investment since most of them
underperformed lower cost alternatives. In support
of this claim, he offers specific comparisons of
each Plan fund to an allegedly similar but more cost
effective fund available in the market. In comparis-
on to an investment in index funds, Braden estim-
ates that the higher fees and lower returns of the
Plan funds cost the Plan some $140 million by the
end of 2007.

Finally, the complaint also alleges that the mutual
fund companies whose funds were included in the
Plan shared with Merrill Lynch portions of the fees
they collected from participants' investments. This
practice, sometimes called "revenue sharing," is
used to cover a portion of the costs of services
provided by an entity such as a trustee of a 401(k)
plan, and is not uncommon in the industry. Braden
alleges, however, that in this case the revenue shar-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097
**(Cite as: 2009 WL 4062105 (C.A.8 (Mo.)))**

ing payments were not reasonable compensation for services rendered by Merrill Lynch, but rather were kickbacks paid by the mutual fund companies in exchange for inclusion of their funds in the Plan. The Plan's trust agreement requires appellees to keep the amounts of the revenue sharing payments confidential.

Count I of the complaint spells out Braden's breach of fiduciary duty claim in detail. Count III alleges that appellees breached their duty of loyalty by failing to inform Plan participants of certain information relating to the fees charged by the Plan funds, as well as the amounts of the revenue sharing payments made to Merrill Lynch. Count V alleges that the revenue sharing payments were "prohibited transactions" under 29 U.S.C. § 1106(a)(1). Finally, Counts II and IV allege, respectively, that those appellees with oversight responsibility failed adequately to monitor those who managed the Plan and that they are liable for the breaches of their cofiduciaries pursuant to 29 U.S.C. § 1105(a).

The district court dismissed all claims. It concluded that Braden could not personally have suffered injury before October 31, 2003, the date he first contributed to the Plan. According to the district court, Braden therefore did not have Article III standing to assert claims for breaches before that date. It dismissed the remaining claims on the grounds that Braden had alleged insufficient facts to support the claim of imprudent or disloyal management, that appellees had no duty to disclose the information Braden sought, and that he had failed to show the alleged prohibited transactions with Merrill Lynch were not exempted by 29 U.S.C. § 1108. Because each of the direct claims failed, the court also dismissed the derivative claims based on monitoring and cofiduciary liability.

**\*3** Braden challenges each of the district court's conclusions on appeal. We review the court's order de novo, accepting as true the complaint's factual allegations and granting all reasonable inferences to the non-moving party. *Taxi Connection v. Dakota, Minn. & E. R.R. Corp.,* 513 F.3d 823, 825 (8th

Cir.2008).

## II.

In order to proceed with his claims on behalf of the Plan, Braden must have both Article III standing and a cause of action under ERISA. *See, e.g., Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.,* 465 F.3d 1123, 1124 (9th Cir.2006). We conclude that Braden has made a sufficient showing at this stage of the litigation to satisfy both requirements and that the district court erred in concluding that he lacked standing to maintain claims for the period before he began participating in the Plan.

[1][2] The doctrine of standing limits the jurisdiction of federal courts to "those disputes which are appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (*quoting Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)). Some elements of the doctrine are prudential, involving self imposed limits on judicial power. These limits may be "modified or abrogated by Congress." *Bennett v. Spear,* 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). The heart of standing, however, is the principle that in order to invoke the power of a federal court, a plaintiff must present a "case" or "controversy" within the meaning of Article III of the Constitution. This "irreducible constitutional minimum of standing" requires a showing of "injury in fact" to the plaintiff that is "fairly traceable to the challenged action of the defendant," and "likely [to] be redressed by a favorable decision." *Lujan,* 504 U.S. at 560-61, 112 S.Ct. 2130 (citations and alterations omitted).

[3] "Injury in fact" is an invasion of a legally cognizable right. Whether a plaintiff has shown such an injury "often turns on the nature and source of the claim asserted." *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In most cases, then, a plaintiff's standing tracks his cause of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097
**(Cite as: 2009 WL 4062105 (C.A.8 (Mo.)))**

action. That is, the question whether he has a cognizable injury sufficient to confer standing is closely bound up with the question of whether and how the law will grant him relief. *See* William A. Fletcher, *The Structure of Standing,* 98 Yale L.J. 221, 239 (1988) ("[T]he question of whether plaintiff 'stands' in a position to enforce defendant's duty is .... determined by looking to the substantive law upon which plaintiff relies."). It is crucial, however, not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive. *See Ass'n of Data Processing Serv. Orgs. v. Camp,* 397 U.S. 150, 152-54, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

[4] Article III generally requires injury to the plaintiff's personal legal interests, *see Vt. Agency of Natural Res. v. United States ex rel. Stevens,* 529 U.S. 765, 771-72, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000),[FN3] but that does not mean that a plaintiff with Article III standing may only assert his own rights or redress his own injuries. To the contrary, constitutional standing is only a threshold inquiry, and "so long as [Article III] is satisfied, persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others." *Id.* at 501, 95 S.Ct. 2197. In such a case, a plaintiff may be able to assert causes of action which are based on conduct that harmed him, but which sweep more broadly than the injury he personally suffered. *See Sprint Commc'ns Co. v. APCC Servs., Inc.,* --- U.S. ----, 128 S.Ct. 2531, 2543, 171 L.Ed.2d 424 (2008) ( "[F]ederal courts routinely entertain suits which will result in relief for parties that are not themselves directly bringing suit.").

**\*4** [5] The district court erred by conflating the issue of Braden's Article III standing with his potential personal causes of action under ERISA. It concluded that Braden had no standing for the period before he began participating in the Plan because "[u]nder ERISA, a fiduciary relationship does not

exist towards potential participants in a plan and such potential participants have no standing to sue for ... breach of fiduciary duty." It therefore granted appellees' motion to dismiss "all claims occurring prior to October 31, 2003." In reaching this conclusion, the district court mixed two distinct issues. Whether Braden may pursue claims on behalf of the Plan at all is a question of constitutional standing which turns on his personal injury. Whether relief may be had for a certain period of time is a separate question, and its answer turns on the cause of action Braden asserts.

At this stage in the litigation it is impossible to say when any particular claim "occurred" in the sense of when the action giving rise to it began or ended. We must assume for purposes of this appeal, however, that Braden's allegations are true. *Taxi Connection,* 513 F.3d at 825. On that standard Braden has made a sufficient showing of standing for the entire period embraced by his complaint. *See Lujan,* 504 U.S. at 561, 112 S.Ct. 2130 (standing must be shown "with the manner and degree of evidence required at the successive stages of the litigation").

Braden has satisfied the requirements of Article III because he has alleged actual injury to his own Plan account. That injury is fairly traceable to appellees' conduct because he has alleged a causal connection between their actions-even those taken before his participation in the Plan-and his injury.[FN4] Finally, the injury is likely to be redressed by a favorable judgment. *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. Braden has thus "made out a 'case or controversy' between himself and [appellees] within the meaning of Art. III." *Warth,* 422 U.S. at 498, 95 S.Ct. 2197.

The question whether recovery might be had for the period before Braden personally suffered injury is not one of constitutional standing, but turns instead on whether the "statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id.* at 500, 95 S.Ct. 2197. In this case, we

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097
**(Cite as: 2009 WL 4062105 (C.A.8 (Mo.)))**

must answer that question in the affirmative.

[6] 29 U.S.C. § 1132(a)(2) provides for a civil action "by a participant ... for appropriate relief under" 29 U.S.C. § 1109. It is undisputed that Braden is a "participant." *See Adamson v. Armco, Inc.*, 44 F.3d 650, 654 (8th Cir.1995) ("A participant ... is defined in ERISA as someone 'who is or may become eligible to receive a benefit of any type from an employee benefit plan.' ") (*quoting* 29 U.S.C. § 1002(7)). It is well settled, moreover, that suit under § 1132(a)(2) is "brought in a representative capacity on behalf of the plan as a whole" and that remedies under § 1109 "protect the entire plan." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 & n. 9, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 128 S.Ct. 1020, 1026, 169 L.Ed.2d 847 (2008) (section 1132(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries.").

**\*5** Courts have recognized that a plaintiff with Article III standing may proceed under § 1132(a)(2) on behalf of the plan or other participants. *See, e.g.*, *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir.1998) ("[T]he standing-related provisions of ERISA were not intended to limit a claimant's right to proceed under Rule 23 on behalf of all individuals affected by the [fiduciary's] challenged conduct, regardless of the representative's lack of participation in all the ERISA-governed plans involved."). Thus, a plaintiff may seek relief under § 1132(a)(2) that sweeps beyond his own injury. Since Braden has standing under Article III, we conclude that § 1132(a)(2) provides him a cause of action to seek relief for the entire Plan. The relief that may be appropriate, should Braden succeed, is not necessarily limited to the period in which he personally suffered injury.

Our decision in *Harley v. Minn. Mining & Mfg. Co.*, 284 F.3d 901 (8th Cir.2002), is not to the contrary. In *Harley* the plaintiffs were participants in a defined benefit plan who sued to recover losses caused to the plan by the fiduciary's allegedly imprudent investments. *Id.* at 905. Because the plan

retained a surplus notwithstanding the losses, however, the plaintiffs' own benefits remained unchanged and they accordingly suffered no harm. *Id.* at 905-06. We concluded that "participants or beneficiaries who have suffered *no* injury in fact" do not have standing to sue on behalf of the plan under § 1132(a)(2). *Id.* at 906-07 (emphasis in original). This is not such a case as pled by Braden.

The present case is different for the simple reason that Braden has alleged injury in fact that is causally related to the conduct he seeks to challenge on behalf of the Plan. Unlike the *Harley* plaintiffs, Braden has a personal stake in the litigation. His own recovery will stand or fall with that of the Plan because § 1132(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries." *LaRue*, 128 S.Ct. at 1026. "At bottom, 'the gist of the question of standing' is whether [a plaintiff has] 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.' " *Massachusetts v. EPA*, 549 U.S. 497, 517, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007) (*quoting Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). This central concern of Article III is satisfied here, and § 1132(a)(2) provides the appropriate vehicle for Braden to proceed on behalf of the Plan. We therefore conclude that the district court erred in dismissing Braden's claims for lack of standing.

### III.

### A.

[7][8][9] Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097
**(Cite as: 2009 WL 4062105 (C.A.8 (Mo.)))**

plausible on its face.' " *Ashcroft v. Iqbal,* --- U.S. -
---, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (
*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544,
570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The
plausibility standard requires a plaintiff to show at
the pleading stage that success on the merits is
more than a "sheer possibility." *Id.* It is not,
however, a "probability requirement." *Id.* Thus, "a
well-pleaded complaint may proceed even if it
strikes a savvy judge that actual proof of the facts
alleged is improbable, and 'that a recovery is very
remote and unlikely.' " *Twombly,* 550 U.S. at 556,
127 S.Ct. 1955 (*quoting Scheuer v. Rhodes,* 416
U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)
).

**\*6** [10] A complaint states a plausible claim for re-
lief if its "factual content ... allows the court to
draw the reasonable inference that the defendant is
liable for the misconduct alleged." *Iqbal,* 129 S.Ct.
at 1949. Several principles guide us in determining
whether a complaint meets this standard. First, the
court must take the plaintiff's factual allegations as
true. *Id.* at 1949-50. This tenet does not apply,
however, to legal conclusions or "formulaic recita-
tion of the elements of a cause of action"; such
allegations may properly be set aside. *Id.* (*quoting
Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). In ad-
dition, some factual allegations may be so inde-
terminate that they require "further factual enhance-
ment" in order to state a claim. *Id.* (*quoting
Twombly,* 550 U.S. at 557, 127 S.Ct. 1955;) *see
also Brooks v. Ross,* 578 F.3d 574, 581 (7th
Cir.2009).

[11] Finally, the complaint should be read as a
whole, not parsed piece by piece to determine
whether each allegation, in isolation, is plausible.
*See Vila v. Inter-Am. Inv. Corp.,* 570 F.3d 274, 285
(D.C.Cir.2009) (factual allegations should be
"viewed in their totality"); *cf. Tellabs, Inc. v.
Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322-23,
127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) ("The in-
quiry [under the Private Securities Litigation Re-
form Act] is whether *all* of the facts alleged, taken

collectively, give rise to a strong inference of sci-
enter, not whether any individual allegation, scru-
tinized in isolation, meets that standard."). Ulti-
mately, evaluation of a complaint upon a motion to
dismiss is "a context-specific task that requires the
reviewing court to draw on its judicial experience
and common sense." *Iqbal,* 129 S.Ct. at 1950.

[12][13] With these principles in mind, we turn to
Braden's complaint. Count I alleges that appellees
breached the fiduciary duties of prudence and loy-
alty imposed upon them by 29 U.S.C. § 1104. In or-
der to state a claim under this provision, a plaintiff
must make a prima facie showing that the defendant
acted as a fiduciary, breached its fiduciary duties,
and thereby caused a loss to the Plan. *Pegram v.
Herdrich,* 530 U.S. 211, 225-26, 120 S.Ct. 2143,
147 L.Ed.2d 164 (2000); *Roth v. Sawyer-Cleator
Lumber Co.,* 16 F.3d 915, 917 (8th Cir.1994). Only
the issue of breach is disputed here.

[14][15] ERISA imposes upon fiduciaries twin du-
ties of loyalty and prudence, requiring them to act
"solely in the interest of [plan] participants and be-
neficiaries" and to carry out their duties "with the
care, skill, prudence, and diligence under the cir-
cumstances then prevailing that a prudent man act-
ing in a like capacity and familiar with such matters
would use in the conduct of an enterprise of a like
character and with like aims." 29 U.S.C. §
1104(a)(1). The statute's "prudent person standard
is an objective standard ... that focuses on the fidu-
ciary's conduct preceding the challenged decision."
*Roth,* 16 F.3d at 917 (*citing Katsaros v. Cody,* 744
F.2d 270, 279 (2d Cir.1984)). In evaluating whether
a fiduciary has acted prudently, we therefore focus
on the process by which it makes its decisions
rather than the results of those decisions. *Id.* at
917-18; *Schaefer v. Ark. Med. Soc'y,* 853 F.2d
1487, 1492 (8th Cir.1988) (fiduciaries must
"investigate all decisions that will affect the pen-
sion plan.").

**\*7** Focusing on this standard of liability, the district
court found the complaint inadequate because it did
not allege sufficient facts to show how appellees'

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097
**(Cite as: 2009 WL 4062105 (C.A.8 (Mo.)))**

decision making process was flawed. We conclude that the district court erred in its application of Rule 8. Accepting Braden's well pleaded factual allegations as true, he has stated a claim for breach of fiduciary duty.

[16] The district court erred in two ways. It ignored reasonable inferences supported by the facts alleged. It also drew inferences in appellees' favor, faulting Braden for failing to plead facts tending to contradict those inferences. Each of these errors violates the familiar axiom that on a motion to dismiss, inferences are to be drawn in favor of the non-moving party. *Northstar Indus. v. Merrill Lynch & Co.,* 576 F.3d 827, 832 (8th Cir.2009). *Twombly* and *Iqbal* did not change this fundamental tenet of Rule 12(b)(6) practice. *See Iqbal,* 129 S.Ct. at 1949; *Vila,* 570 F.3d at 285; *Justice v. Town of Cicero,* 577 F.3d 768, 771 (7th Cir.2009); *al-Kidd v. Ashcroft,* 580 F.3d 949, 956 (9th Cir.2009).

[17] The first of these errors stems from the mistaken assumption that Braden was required to describe directly the ways in which appellees breached their fiduciary duties. Thus, for example, the district court faulted the complaint for making "no allegations regarding the fiduciaries' conduct." Rule 8 does not, however, require a plaintiff to plead "specific facts" explaining precisely how the defendant's conduct was unlawful. *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). Rather, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled " 'give the defendant fair notice of what the claim is and the grounds upon which it rests,' " *id.* (*quoting Twombly,* 550 U.S. at 555, 127 S.Ct. 1955) (alteration omitted), and "allow [ ] the court to draw the reasonable inference" that the plaintiff is entitled to relief. *Iqbal,* 129 S.Ct. at 1949.

Braden has satisfied these requirements. The complaint alleges that the Plan comprises a very large pool of assets, that the 401(k) marketplace is highly competitive, and that retirement plans of such size consequently have the ability to obtain institutional class shares of mutual funds. Despite this ability, according to the allegations of the complaint, each of the ten funds included in the Plan offers only retail class shares, which charge significantly higher fees than institutional shares for the same return on investment.[FN5] The complaint also alleges that seven of the Plan's ten funds charge 12b-1 fees from which participants derive no benefit. The complaint states that appellees did not change the options included in the Plan despite the fact that most of them underperformed the market indices they were designed to track. Finally, it alleges that the funds included in the Plan made revenue sharing payments to the trustee, Merrill Lynch, and that these payments were not made in exchange for services rendered, but rather were a quid pro quo for inclusion in the Plan.

**\*8** The district court correctly noted that none of these allegations directly addresses the process by which the Plan was managed. It is reasonable, however, to infer from what is alleged that the process was flawed. Taken as true, and considered as a whole, the complaint's allegations can be understood to assert that the Plan includes a relatively limited menu of funds[FN6] which were selected by Wal-Mart executives despite the ready availability of better options. The complaint alleges, moreover, that these options were chosen to benefit the trustee at the expense of the participants. If these allegations are substantiated, the process by which appellees selected and managed the funds in the Plan would have been tainted by failure of effort, competence, or loyalty. Thus the allegations state a claim for breach of fiduciary duty. *See Roth,* 16 F.3d at 918-19.[FN7]

These are of course only inferences, and there may well be lawful reasons appellees chose the challenged investment options. It is not Braden's responsibility to rebut these possibilities in his complaint, however. The district court erred by placing that burden on him, finding the complaint inadequate for failing to rule out potential lawful explanations for appellees' conduct. It stated that ap-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097

**(Cite as: 2009 WL 4062105 (C.A.8 (Mo.)))**

pellees "could have chosen funds with higher fees for any number of reasons, including potential for higher return, lower financial risk, more services offered, or greater management flexibility." That may be so, but Rule 8 does not require a plaintiff to plead facts tending to rebut all possible lawful explanations for a defendant's conduct.

To be sure, a plaintiff may need to rule out alternative explanations in some circumstances in order to survive a motion to dismiss. In *Iqbal,* for example, the Supreme Court concluded that the plaintiff failed to state a claim in light of "more likely explanations" for the defendants' conduct. *Iqbal,* 129 S.Ct. at 1951. Iqbal had alleged that in response to the terrorist attacks of September 11, 2001, the Attorney General and the FBI Director adopted an unconstitutional policy of subjecting Arab Muslim men to harsh conditions of confinement solely on account of their race, religion, or national origin. *See id.* at 1942. The Court perceived an "obvious alternative explanation" for the disparate impact of the defendants' policies on Arab Muslims, however: "The September 11 attacks were perpetrated by 19 Arab Muslim hijackers who counted themselves members in good standing of al Qaeda, an Islamic fundamentalist group. Al Qaeda was headed by another Arab Muslim-Osama bin Laden-and composed in large part of his Arab Muslim disciples." *Id.* at 1951.

The Court assumed that any rational investigation of the September 11 attacks would thus have focused on Arab Muslims; a disparate impact on this group is exactly what one would expect from such an investigation. It is in this sort of situation-where there is a concrete, "obvious alternative explanation" for the defendant's conduct-that a plaintiff may be required to plead additional facts tending to rule out the alternative. *Id.* (*quoting Twombly,* 550 U.S. at 567, 127 S.Ct. 1955); *cf. Twombly,* 550 U.S. at 566, 127 S.Ct. 1955 (plaintiff failed to state a claim where facts alleged described nothing more than defendants' "natural," lawful reaction to economic incentives). Such a requirement is neither a

special rule nor a new one. It is simply a corollary of the basic plausibility requirement. An inference pressed by the plaintiff is not plausible if the facts he points to are precisely the result one would expect from lawful conduct in which the defendant is known to have engaged.

**\*9** Not every potential lawful explanation for the defendant's conduct renders the plaintiff's theory implausible. Just as a plaintiff cannot proceed if his allegations are " 'merely consistent with' a defendant's liability," *id.* at 1949 (*quoting Twombly,* 550 U.S. at 557, 127 S.Ct. 1955), so a defendant is not entitled to dismissal if the facts are merely consistent with lawful conduct. And that is exactly the situation in this case. Certainly appellees could have chosen funds with higher fees for various reasons, but this speculation is far from the sort of concrete, obvious alternative explanation Braden would need to rebut in his complaint. Requiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the "complaint is construed most favorably to the nonmoving party," *Northstar Indus.,* 576 F.3d at 832, and would impose the sort of "probability requirement" at the pleading stage which *Iqbal* and *Twombly* explicitly reject. *See Iqbal,* 129 S.Ct. at 1949-50.

To recognize that the pleading standard established by Rule 8 applies uniformly in "all civil actions," *id.* at 1953 (*quoting* Fed.R.Civ.P. 1), is not to ignore the significant costs of discovery in complex litigation and the attendant waste and expense that can be inflicted upon innocent parties by meritless claims. *See Twombly,* 550 U.S. at 558-60, 127 S.Ct. 1955. Here, however, we must be attendant to ERISA's remedial purpose and evident intent to prevent through private civil litigation "misuse and mismanagement of plan assets." *Russell,* 473 U.S. at 140 n. 8, 142 n. 9, 105 S.Ct. 3085.[FN8]

Congress intended that private individuals would play an important role in enforcing ERISA's fiduciary duties-duties which have been described as "the highest known to the law." *Donovan v. Bier-*

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097

**(Cite as: 2009 WL 4062105 (C.A.8 (Mo.)))**

*wirth,* 680 F.2d 263, 272 n. 8 (2d Cir.1982). In giving effect to this intent, we must be cognizant of the practical context of ERISA litigation. No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences. Thus, while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of their limited access to crucial information. If plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer. These considerations counsel careful and holistic evaluation of an ERISA complaint's factual allegations before concluding that they do not support a plausible inference that the plaintiff is entitled to relief.

The district court erred in dismissing Braden's fiduciary duty claim because it misapplied the pleading standard of Rule 8, most fundamentally by failing to draw reasonable inferences in favor of the non-moving party as is required. We conclude that Braden has pled sufficient facts to proceed with his claim for breach of fiduciary duty.

**B.**

**\*10** ERISA and its associated regulations impose upon fiduciaries extensive and specific obligations of disclosure. *See generally* 29 U.S.C. §§ 1021 et seq.; 29 C.F.R. § 2520. These duties are supplemented by the general duty of loyalty under 29 U.S.C. § 1104(a)(1). Courts have interpreted this duty to impose additional obligations of communication and disclosure under certain circumstances. *See Kalda v. Sioux Valley Physician Partners, Inc.,* 481 F.3d 639, 644 (8th Cir.2007). Nevertheless, we are not quick to infer specific duties of disclosure under § 1104 because of the extent of the statutory and regulatory scheme. *See Jensen v. SIPCO, Inc.,* 38 F.3d 945, 952 (8th Cir.1994); *Barrs v. Lockheed Martin Corp.,* 287 F.3d 202, 207 (1st Cir.2002).

[18] It is uncontroversial that the duty of loyalty requires fiduciaries to "deal fairly and honestly with all plan members," *Shea v. Esensten,* 107 F.3d 625, 628 (8th Cir.1997), *cert. denied,* 522 U.S. 914, 118 S.Ct. 297, 139 L.Ed.2d 229 (1997), and it is a breach of this duty affirmatively to mislead a participant or beneficiary. *See Kalda,* 481 F.3d at 644; *Varity Corp. v. Howe,* 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Morever, in some circumstances fiduciaries must on their own initiative "disclose any material information that could adversely affect a participant's interests." *Kalda,* 481 F.3d at 644 (*citing Shea,* 107 F.3d at 628).

[19] Braden claims that appellees breached their duty of loyalty by failing to disclose to participants complete and accurate material information about the Plan funds and the process by which they were selected. His nondisclosure claims can be separated into two groups. One group relates to the performance of and fees charged by the Plan funds and the other to the revenue sharing payments to Merrill Lynch. With respect to the former, Braden alleges that appellees should have disclosed that (1) the funds charged higher fees than readily available alternatives designed to track the same market indices; (2) the funds underperformed readily available and more cost effective alternatives; (3) all of the fees were paid from Plan assets and they consequently depleted participants' retirement savings; (4) all of the Plan funds offered retail shares despite the fact that Wal-Mart had access to institutional shares; (5) the 12b-1 fees charged by several of the funds did not benefit participants, and comparable alternatives charged no such fees; and (6) appellees did not select the Plan funds or continually evaluate them based on the reasonableness of the fees they charged. In connection with the revenue sharing payments, Braden alleges that appellees should have disclosed (1) the amounts of the payments; (2) that they were retained by Merrill Lynch and not in turn paid to the Plan; and (3) that the payments were made in exchange for inclusion of certain funds in the Plan.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 15
--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097
**(Cite as: 2009 WL 4062105 (C.A.8 (Mo.)))**

The district court dismissed these claims, concluding that ERISA does not require disclosure of revenue sharing arrangements and that the other information Braden sought was not material. We disagree.

**\*11** [20] Information is material if there is a substantial likelihood that nondisclosure "would mislead a reasonable employee in the process of making an adequately informed decision regarding benefits to which she might be entitled." *Kalda,* 481 F.3d at 644 (*quoting Krohn v. Huron Mem'l Hosp.,* 173 F.3d 542, 551 (6th Cir.1999) (alteration omitted)). In the context of this case, materiality turns on the effect information would have on a reasonable participant's decisions about how to allocate his or her investments among the options in the Plan. *See Edgar v. Avaya, Inc.,* 503 F.3d 340, 350 (3d Cir.2007).

[21] Materiality is a fact intensive issue which can be decided as a matter of law only if no reasonable trier of fact could disagree. *See Pfahler v. Nat'l Latex Prods. Co.,* 517 F.3d 816, 830-31 (6th Cir.2007); *In re Unisys Sav. Plan Litig.,* 74 F.3d 420, 443 (3d Cir.1996); *cf. TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 450, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976) ("The determination [of materiality under SEC Rule 14a-9] requires delicate assessments of the inferences from a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact.").

Braden's nondisclosure claim relating to fees parallels his claim for breach of fiduciary duty. He alleges, for example, that appellees had a duty to disclose to participants that Plan funds charged higher fees than comparable funds, that Wal-Mart had access to more cost effective institutional shares, and that appellees did not select or evaluate the funds on the basis of the fees they charged. A reasonable trier of fact could find that failure to disclose this information would mislead a reasonable participant in the process of making investment decisions un-

der the Plan. *See Kalda,* 481 F.3d at 644. For example, participants might conclude in light of this information that Plan funds were not selected using appropriate criteria and might therefore direct their investments toward other options. Accordingly, Braden has stated a claim under § 1104. *See id.; Unisys,* 74 F.3d at 442-43 (finding triable issues of fact where plaintiffs alleged material misrepresentations and omissions regarding risks associated with certain investment options offered by plan).

By the same token, Braden's allegations are sufficient to state a claim that appellees breached their duty of loyalty by failing to disclose details about the revenue sharing payments. Braden alleges that those payments corrupted the fund selection process-that each fund was selected for inclusion in the Plan because it made payments to the trustee, and not because it was a prudent investment. If true, this information could influence a reasonable participant in evaluating his or her options under the Plan. In *Shea v. Esensten,* we found an HMO had a duty to disclose financial incentives that would discourage doctors from making referrals for conditions covered under the HMO's plan. *See* 107 F.3d at 629. The context of that case was quite different, but the fundamental principle is applicable here. ERISA's duty of loyalty may require a fiduciary to disclose latent conflicts of interest which affect participants' ability to make informed decisions about their benefits.

**\*12** The district court did not apply the materiality analysis laid out in *Shea* and *Kalda.* Instead, it simply concluded that there is no duty to disclose revenue sharing payments. While we agree that there may be no per se duty to disclose such payments, that conclusion is not dispositive here. As we have indicated, materiality is a fact and context sensitive inquiry. On this record, Braden's disclosure claims cannot be decided as a matter of law. For now, he has alleged sufficient facts to support an inference that nondisclosure of details about the fees charged by the Plan funds and the amounts of the revenue sharing payments would "mislead a

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097

**(Cite as: 2009 WL 4062105 (C.A.8 (Mo.)))**

reasonable [participant] in the process of making an adequately informed decision regarding" allocation of investments in the Plan. *Kalda,* 481 F.3d at 644. The district court therefore erred in dismissing Braden's nondisclosure claims.

### C.

[22] Section 406(a)(1) of ERISA, 29 U.S.C. § 1106(a)(1), "supplements the fiduciary's general duty of loyalty to the plan's beneficiaries ... by categorically barring certain transactions deemed 'likely to injure the pension plan.' " *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.,* 530 U.S. 238, 241-42, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000) (quoting *Comm'r v. Keystone Consol. Indus., Inc.,* 508 U.S. 152, 160, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993)). Among the transactions barred by § 1106(a)(1) are those that "constitute[ ] a direct or indirect ... (C) furnishing of goods, services, or facilities between the plan and a party in interest; [or] (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(C), (D). These prohibitions are subject to a number of statutory exemptions. As relevant here, § 1106(a)(1) does not bar "[c]ontracting or making reasonable arrangements with a party in interest for ... services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefore." 29 U.S.C. § 1108(b)(2).

Braden alleges that appellees violated these sections of the statute by causing the Plan to engage in prohibited transactions with the trustee, Merrill Lynch. As trustee and as an entity "providing services to" the Plan, Merrill Lynch was a "party in interest" within the meaning of § 1106. 29 U.S.C. § 1002(14). Braden alleges that the revenue sharing payments made by the Plan funds to Merrill Lynch were "kickbacks" in exchange for inclusion in the Plan, rather than reasonable compensation for actual services performed. Accordingly, he argues that these payments were prohibited by §§ 1106(a)(1)(C) and (D) and not exempted by §

1108(b)(2).

The district court did not directly address the application of § 1106(a)(1) to the revenue sharing payments. It concluded instead that Braden's claims failed because he had not pled facts raising a plausible inference that the payments were unreasonable in relation to the services provided by Merrill Lynch and thus had failed to show they were not exempted by § 1108. This was wrong because the statutory exemptions established by § 1108 are defenses which must be proven by the defendant. *See Howard v. Shay,* 100 F.3d 1484, 1488 (9th Cir.1996), *cert. denied,* 520 U.S. 1237, 117 S.Ct. 1838, 137 L.Ed.2d 1042 (1997) (fiduciary engaging in transaction under § 1106(b) must prove applicability of exemption under § 1108(e)); *Lowen v. Tower Asset Mgmt., Inc.,* 829 F.2d 1209, 1215 (2d Cir.1987); *Donovan v. Cunningham,* 716 F.2d 1455, 1467-68 (5th Cir.1983), *cert. denied,* 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984). Braden does not bear the burden of pleading facts showing that the revenue sharing payments were unreasonable in proportion to the services rendered and the district court erred in dismissing his claim on this basis.

**\*13** [23] We conclude that Braden has stated a claim under § 1106(a)(1)(C). The complaint alleges that appellees caused the Plan to enter into an arrangement with Merrill Lynch, a party in interest, under which Merrill Lynch received undisclosed amounts of revenue sharing payments in exchange for services rendered to the Plan.[FN9] This arrangement amounts to a "direct or indirect ... furnishing of services ... between the plan and a party in interest," 29 U.S.C. § 1106(a)(1)(C). The facts alleged are sufficient to shift the burden to appellees to show that "no more than reasonable compensation [was] paid" for Merrill Lynch's services. 29 U.S.C. § 1108(b)(2); *see N.Y. State Teamsters Council Health & Hosp. Fund v. Estate of De-Perno,* 18 F.3d 179, 183 (2d Cir.1994) (proof of fiduciary's employment of parties in interest "alone ... was sufficient to shift to the defendants the bur-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097
**(Cite as: 2009 WL 4062105 (C.A.8 (Mo.)))**

den to show that the employment of [the parties in interest] was fair and reasonable under all of the circumstances") (internal quotation marks and citation omitted); *see also Nieto v. Ecker*, 845 F.2d 868, 873-74 (9th Cir.1988).[FN10]

[24] Appellees object that this construction of § § 1106 and 1108 renders virtually any allegation of unreasonableness between a covered plan and a service provider a prima facie "prohibited transaction." They argue that unless a plaintiff is required to plead facts plausibly suggesting a transaction is not exempted under § 1108, ERISA fiduciaries will be forced to defend the reasonableness of every service provider transaction. Several considerations persuade us, however, that the burden properly lies with appellees to show that the revenue sharing payments were reasonable under § 1108.

[25] First, § 1106(a)(1) does not by its terms demand that a plaintiff make any allegation of unreasonableness. The exemption for reasonable compensation is in a separate section of the statute, and it is a "general rule of statutory construction that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits." *FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45, 68 S.Ct. 822, 92 L.Ed. 1196 (1948); *cf. SEC v. Ralston Purina Co.*, 346 U.S. 119, 126, 73 S.Ct. 981, 97 L.Ed. 1494 (1953) ("Keeping in mind the broadly remedial purposes of federal securities legislation, imposition of the burden of proof on an issuer who would plead the exemption seems to us fair and reasonable."). The language of the statute is plain, and it allocates the burdens of pleading and proof.

Second, our construction of the statute is in keeping with traditional principles of trust law, which inform our interpretation of ERISA. *Varity Corp.*, 516 U.S. at 496, 116 S.Ct. 1065. The transactions prohibited by § 1106 tend to be those in which "a fiduciary might be inclined to favor [a party in interest] at the expense of the plan's beneficiaries." *Harris Trust & Sav. Bank*, 530 U.S. at 242, 120 S.Ct. 2180. At common law, the fiduciary bears the

burden of justifying such transactions. *See, e.g., Fulton Nat'l Bank v. Tate*, 363 F.2d 562, 571-72 (5th Cir.1966) ("[T]he beneficiary need only show that the fiduciary allowed himself to be placed in a position where his personal interest *might* conflict with the interest of the beneficiary[, and] the law presumes that the fiduciary acted disloyally.") (emphasis in original); *Matter of Estate of Snapp*, 502 N.W.2d 29, 34 (Iowa 1993); *Peyton v. William C. Peyton Corp.*, 7 A.2d 737, 747 (Del.1939). In short, "prohibited transactions [under § 1106(a)(1)] involve self-dealing [and the] settled law is that in such situations the burden of proof is always on the party to the self-dealing transaction to justify its fairness." *Marshall v. Snyder*, 572 F.2d 894, 900 (2d Cir.1978).

*14 Finally, we note that Braden could not possibly show at this stage in the litigation that the revenue sharing payments were unreasonable in proportion to the services rendered because the trust agreement between Wal-Mart and Merrill Lynch required the amounts of the payments to be kept secret. It would be perverse to require plaintiffs bringing prohibited transaction claims to plead facts that remain in the sole control of the parties who stand accused of wrongdoing. *See Lowen*, 829 F.2d at 1215 ("[B]ecause the fiduciary has a virtual monopoly of information concerning the transaction in question, it is in the best position to demonstrate the absence of self-dealing."). Indeed, appellees maintain both that they have no duty to disclose the amounts of the revenue sharing payments and that Braden must nonetheless allege specific facts showing those amounts were unreasonable. In this context-where the ultimate issue involves "the highest [duties] known to the law," *Donovan*, 680 F.2d at 272 n. 8-this position is untenable. We conclude, therefore, that Braden's allegations are sufficient to state a claim under 29 U.S.C. § 1106(a)(1)(C).

Braden also alleges that the revenue sharing payments violated § 1106(a)(1)(D) because they amounted to an illicit "transfer to, or use by or for the benefit of a party in interest, of ... assets of the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097
**(Cite as: 2009 WL 4062105 (C.A.8 (Mo.)))**

plan." Up to now the parties' arguments have focused on whether the revenue sharing payments in this case were "assets of the plan" within the meaning of § 1106(a)(1)(D). Braden contends for the first time in his reply brief, however, that regardless of whether the revenue payments themselves were plan assets, the arrangement with Merrill Lynch may constitute an "indirect ... transfer" of plan assets. 29 U.S.C. § 1106(a)(1)(D). We decline to reach this question which has not been presented to the district court and therefore remand for it to determine in the first instance whether Braden has stated a prima facie claim under § 1106(a)(1)(D).

### D.

[26] The district court dismissed counts II and IV of Braden's complaint, which respectively alleged monitoring and cofiduciary claims, because these claims were derivative of the direct claims which the court had already dismissed. It therefore did not analyze the derivative claims on their merits. The parties dispute on appeal whether the derivative claims fail regardless of the disposition of the other counts. Since "[o]rdinarily, we do not decide issues that the district court did not adjudicate," *Daisy Mfg. Co. v. NCR Corp.,* 29 F.3d 389, 395 (8th Cir.1994), we decline to pass on the merits of the derivative claims here. We instead remand counts II and IV for the district court to consider whether those claims may proceed.

### IV.

For the reasons discussed, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

FN1. *See Braden v. Wal-Mart Stores, Inc.,* 590 F.Supp.2d 1159 (W.D.Mo.2008).

FN2. Braden does not assert each claim against each named defendant. Because the distinctions between the different groups of defendants are not material to the resol-

ution of this appeal, however, we refer generally to "appellees" for the sake of convenience.

FN3. *But see Sprint Commc'ns Co. v. AP-CC Servs., Inc.,* ---U.S. ----, 128 S.Ct. 2531, 2542-43, 171 L.Ed.2d 424 (2008).

FN4. It is true that Braden could not have suffered injury before he began participating in the Plan, but that does not mean actions taken earlier cannot have caused his subsequent injury. For example, if appellees imprudently selected an investment option in 2002 which remained in place when Braden began participating, that earlier action would be causally linked to Braden's injury and would form a proper basis for his claims. If, as the record develops, it were to become apparent that there were breaches of duty entirely unrelated to Braden's injury, it could be appropriate to inquire into his standing to raise those separate claims. *See, e.g., Lewis v. Casey,* 518 U.S. 343, 358, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

FN5. Braden makes more specific allegations about the relative cost of institutional and retail shares in the funds actually included in the Plan. For example, he alleges that in 2007 the Plan had over $984 million invested in the PIMCO Total Return Fund. Notwithstanding this large investment, the Plan held Administrative Class shares subject to an expense ratio of .68%. Institutional class shares in the same fund had an expense ratio of .43%.

FN6. Compare to *Hecker v. Deere & Co.,* which involved a fiduciary duty claim based on excessive fees where participants had access to over 2,500 mutual funds. 556 F.3d 575, 578 (7th Cir.2009). The district court in *Hecker* found it "untenable to suggest that all of the more than 2500 publicly

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097
**(Cite as: 2009 WL 4062105 (C.A.8 (Mo.)))**

available investment options had excessive expense ratios." *Id.* at 581. The far narrower range of investment options available in this case makes more plausible the claim that this Plan was imprudently managed.

FN7. In concluding that Braden has stated a claim, we do not suggest that a claim is stated by a bare allegation that cheaper alternative investments exist in the marketplace. It is clear that "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund." *Hecker*, 556 F.3d at 586. As discussed above, however, application of Rules 8 and 12(b)(6) is a "context-specific task," *Iqbal*, 129 S.Ct. at 1950, and our ultimate conclusions rest on the totality of the specific allegations in this case.

FN8. The Secretary of Labor, who is charged with enforcing ERISA, *see* 29 U.S.C. § 1136(b), depends in part on private litigation to ensure compliance with the statute. To that end, the Secretary has expressed concern over the erection of "unnecessarily high pleading standards" in ERISA cases. Brief for the Secretary of Labor as Amicus Curiae Supporting Plaintiff-Appellant Braden and Requesting Reversal, at 2.

FN9. We reject appellees' argument that Braden pleaded himself out of court by alleging that Merrill Lynch performed literally no services in exchange for the revenue sharing payments. While the complaint makes such statements in some places, it also alleges that the value of Merrill Lynch's services was "nominal." Construing the complaint in Braden's favor, we understand his allegation to be that the revenue sharing payments far exceeded the value of services actually performed.

FN10. Appellees argue that Braden's alleg-

ations "put the exemption in play" and he therefore must plead sufficient facts to show that the payments were unreasonable. To the contrary, a plaintiff need not plead facts responsive to an affirmative defense before it is raised. *See, e.g., Goodman v. Praxair, Inc.,* 494 F.3d 458, 465-66 (4th Cir.2007). Even if Braden's allegation of unreasonableness were seen as raising the exemption for pleading purposes, that does not mean he thereby assumes the burden of proof on the issue. *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1276, at 624-25 (3d ed.2004).

C.A.8 (Mo.),2009.
Braden v. Wal-Mart Stores, Inc.
--- F.3d ----, 2009 WL 4062105 (C.A.8 (Mo.)), 48 Employee Benefits Cas. 1097

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.