# EXHIBIT C



Page 1

Slip Copy, 2009 WL 3246994 (W.D.Wash.), 47 Employee Benefits Cas. 2505
(Cite as: 2009 WL 3246994 (W.D.Wash.))

Only the Westlaw citation is currently available.

United States District Court, W.D. Washington,
at Seattle.
In re WASHINGTON MUTUAL, INC. SECURITIES,
DERIVATIVE & ERISA LITIGATION.
In re Washington Mutual, Inc. Erisa Litigation.
This Document Relates to: All Cases.
**No. 2:08-md-1919 MJP.**
**Lead Case No. C07-1874 MJP.**

Oct. 5, 2009.

**ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS**

MARSHA J. PECHMAN, District Judge.

**\*1** This matter comes before the Court on Defendants' four
motions to dismiss Plaintiffs' Second Amended ERISA
Complaint. (Dkt. No. 223 FN1 (hereinafter "Compl." or "¶
").) Motions to dismiss have been filed by: (1) Defendant
JPMorgan Chase, National Association (Dkt. No. 260); (2)
Defendant Kerry Killinger (Dkt. No. 262); (3) Defendants
Steven Chazen, Stephen Frank, Charles Lillis, Phillip
Matthews, Margaret Osmer-McQuade, James Stever, and
Willis Wood (collectively, the "Director Defendants" or
"HR Committee") (Dkt. No. 258); and (4) Defendants
Todd Baker, Melissa Ballenger, David Beck, Deborah
Bedwell, John Berens, Curt Brouwer, Tom Casey, Ron
Cathcart, Daryl David, Michele Grau-Iversen, Pia
Jorgenson, Suzanne Krahling, William Longbrake,
Michelle McCarthy, Robert Williams, and John Woods
(collectively, the "Committee Defendants") (Dkt. No.

265).

FN1. All citations to entries or filings on the
docket refer to case number 2:08-md-1919 MJP.

Having reviewed the motions, Plaintiffs' omnibus response
(Dkt. No. 288), Defendants' reply briefs in support of their
motions (Dkt.Nos.302, 303, 304, 305), and all papers
submitted in support thereof, and having heard oral
argument from the parties on August 6, 2009 (*see* Dkt. No.
328), the Court makes the following rulings:

1. The Committee Defendants' motion (Dkt. No. 265) is
DENIED with respect to Count One, GRANTED IN
PART AND DENIED IN PART with respect to Count
Four, and GRANTED with respect to Count Five.

2. The Director Defendants' motion (Dkt. No. 258) is
GRANTED with respect to Count One, GRANTED IN
PART AND DENIED with respect to Count Two, and
DENIED with respect to Count Five.

3. Defendant Killinger's motion (Dkt. No. 262) is
GRANTED.

4. Defendant JPMC's motion (Dkt. No. 260) is
GRANTED.

The Court's reasoning is set forth below.

**Procedural History**

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246994 (W.D.Wash.), 47 Employee Benefits Cas. 2505
(Cite as: 2009 WL 3246994 (W.D.Wash.))

On May 7, 2008, the Court consolidated nine related ERISA actions as part of a Multi-District Litigation proceeding against Defendants. (Dkt. No. 25.) On May 20, 2008, the Court appointed co-lead counsel and, on February 18, 2009, Plaintiffs filed the operative consolidated ERISA complaint. (Dkt.Nos.45, 233.) Defendants filed their motions to dismiss on April 27, 2008, and the Court heard argument on these motions on August 6, 2009.

### Background

Plaintiffs Gregory Bushansky, Dana Mara, and Marina Ware are participants in the WaMu Savings Plan (the "Plan"), a defined contribution retirement plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). (¶¶ 14-16.) Washington Mutual, Inc. (the "Company" or "WaMu" or "WMI") filed for bankruptcy protection on September 26, 2008, the day after its banking entities, including Washington Mutual Bank ("WMB"), were seized by the Federal Deposit Insurance Corporation ("FDIC"). The FDIC sold WMB to JPMorgan Chase Bank, National Association ("JPMC" or "Chase"). (¶ 17.)

The WaMu Savings Plan is an "employee pension benefit plan" as defined by ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). (¶ 24.) The Plan was amended in 2002 to include the WaMu Savings Program ("WSP") and an Employee Stock Ownership Program ("ESOP"). (¶¶ 26-28; Rummage Decl., Ex. A (hereinafter "Plan") at § 1.1.) The ESOP is the portion of Plan that allows participants to invest in WaMu securities through the Company Stock Fund. (¶¶ 29-30; Plan § 2.23.) WaMu employees were eligible to join the Plan at any time after their hire date and, after an employee had completed at least one year of service, WaMu matched contributions dollar for dollar for the first three percent of qualifying pay contributed. (Rummage Decl., Ex. B (hereinafter

"Summary Plan Description" or "SPD").) Participants also received fifty cents for each dollar for the two percent of qualifying contributions beyond their initial three percent contributions. (*Id.*) Participants could invest in thirteen "principal" investment funds, the ESOP, or a variety of other securities via BrokerageLink. (*Id.* at 18.)

**\*2** Broadly, Plaintiffs allege that WaMu securities were an imprudent investment because the Company (1) relied too heavily on subprime mortgage loans and other risky mortgage loan products, (2) allowed lax underwriting policies for its loans, (3) manipulated the property appraisal process, (4) failed to maintain adequate risk management policies, and (5) failed to accurately account for is subprime operations on its misleading financial statements. (¶ 4.) [FN2] Plaintiffs allege the Plan fiduciaries had the authority to select and revise Plan investment options at their discretion, including the WaMu Stock Fund. (¶¶ 38-39.)

> FN2. These allegations mirror Plaintiffs' claims in the Securities Litigation. (*See* Dkt. No. 277 at 5.) Plaintiffs allege that WaMu stock was an imprudent investment because the Company (1) relied heavily on high-risk loan products including subprime mortgage loans (¶¶ 101-173), (2) maintained poor underwriting standards (¶¶ 174-224), (3) pursued an illegal scheme to artificially inflate appraisals during the loan origination process (¶¶ 225-236), (4) failed to implement effective risk-management controls (¶¶ 237-240), and (5) did not account for exposure to loan losses and engaged in other questionable accounting practices (¶¶ 241-262). (¶ 99.)

The Committee Defendants are the members of the Plan Investment Committee ("PIC") and the Plan Administration Committee ("PAC"). Both PIC and PAC

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246994 (W.D.Wash.), 47 Employee Benefits Cas. 2505
(Cite as: 2009 WL 3246994 (W.D.Wash.))

are named fiduciaries of the Plan. (¶ 86, Plan § 12.1(c).)

PIC, which includes Defendants Baker, Ballenger, Beck, Brouwer, David, McCarthy, Meola, Williams and Woods, had the responsibility of selecting and monitoring the investment funds in the Plan. (¶¶ 22, 75-82 (further detailing responsibilities).) The Plan provides that PIC "shall be the fiduciary responsible for selecting the investment funds for the Plan." (Plan § 10.1(a).) Though this section of the Plan does not specify whether the term "investment fund" encompasses investments in the Company Stock Fund, a later section provides that participants may "allocate contributions to their accounts to various investment funds, including a fund (the 'Company Stock Fund') which will be invested primarily in the common stock of the Company." (Plan § 10.3.) The Plan Summary distributed to employees, however, differentiates between "investment fund" options and the ESOP option. (SPD at 18-21.) The term "investment fund" is not a defined term in the Plan. (*See* Plan Art. II.) PIC had the authority to "review, select or remove, and monitor investment funds and fund managers." (Plan § 12.2(c)(ii); *see also* SPD at 32 ("The Plan Investment Committee is responsible for selecting investment options for the plan and for monitoring the performance of those investments.").)

PAC, which consists of Defendants Beck, Bedwell, Berens, Casey, Cathcart, David, Grau-Iverson, Jorgenson, Krahling, Longbrake, and Williams, exercised administrative control over the Plan, including determining participant eligibility. (¶¶ 23, 95-98; Plan § 12.2 .) Plaintiffs allege that, through PAC's required dissemination of Plan documents to participants, PAC incorporated by reference WaMu's misleading SEC filings. (¶ 97.) Plaintiffs pay particular attention to PAC members Casey (¶¶ 249, 282, 288) and Cathcart (¶ 138) for overseeing WaMu's heightening risk position.

The Director Defendants are all members of the Human Resources Committee of the Board of Directors. (¶ 21.) The HR Committee was charged with overseeing the management of the Plan and "periodically review[ing] the performance of the funds and the investment managers of the funds." (¶ 75 (quoting HR Committee charter).) The Director Defendants appointed the members of PIC and PAC and had a duty to monitor both, though there is some ambiguity in the appointment provisions of the Plan. (¶¶ 78-80, 81-82.) The Board of Directors had the power to delegate amendment authority to PIC or PAC as long as "the delegate reasonably believes that the amendment will not have the impact of significantly increasing the cost or potential liability exposure of the Plan." (Plan § 13.1(c) .)

**\*3** Defendant Kerry Killinger is a former Director, Chairman of the Board, Chief Executive Officer, and President of WaMu and an alleged de facto Plan fiduciary by virtue of the Board's ability to supervise PIC and his attendance at HR Committee meetings. (¶¶ 20, 71-73.) Plaintiffs allege Killinger "made numerous statements, many of which were incomplete and inaccurate" to Plan participants. (¶ 72.) In particular, Plaintiffs point to statements Killinger made in the press (¶¶ 137, 156, 164-67, 169, 278, 283, 295, 303, 335, 340, 362, 367-68), at various corporate meetings (¶¶ 170-71, 296-97, 310, 320-21), and in SEC filings (¶¶ 282, 285-86, 288, 291, 293, 300, 307, 313, 318, 333).

Plaintiffs identify WMI, a bank holding company, as a "party" in the Complaint, though they do not name WMI as a Defendant. (¶ 17.) Plaintiffs name JPMC as a Defendant because it acquired WMB, a depository bank, from the FDIC. (¶ 42.) Defendant JPMC is not sued as a fiduciary, but is named as a Defendant based on its alleged assumption of liability through the purchase of WMB. Although WMI was not a named fiduciary of the plan, Plaintiffs argue WMI was a de facto fiduciary because it "had the responsibility to appoint, and hence to monitor and remove, the Trustee." (¶ 63.)

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Slip Copy, 2009 WL 3246994 (W.D.Wash.), 47 Employee Benefits Cas. 2505
(Cite as: 2009 WL 3246994 (W.D.Wash.))

Plaintiffs assert six causes of action:

1. *Count One* against PIC, the Director Defendants, and JPMC for failure to prudently and loyally manage the Plan's assets. (¶¶ 391-410.) Plaintiffs allege these Defendants had the discretion to remove WaMu common stock as an investment option from the Plan and breached their duty of prudence by preserving the stock as an investment option. Plaintiffs have indicated they withdraw this claim with respect to the Director Defendants. (*See* Dkt. No. 288 at 70.)

2. *Count Two* against the Director Defendants and JPMC for failure to monitor the Plan's named fiduciaries. (¶¶ 411-20.) Plaintiffs argue the HR Committee failed to evaluate the fiduciaries' analysis of WaMu stock.

3. *Count Three* against JPMC and Killinger for breach of the duty of disclosure to co-fiduciaries. (¶¶ 421-27.)

4. *Count Four* against PAC, JPMC, and Killinger for the failure to provide complete and accurate information to plan participants. (¶¶ 428-39.)

5. *Count Five* against all Defendants for co-fiduciary liability. (¶¶ 440-51.)

6. *Count Six* against JPMC for knowing participation in a breach of fiduciary duty. (¶¶ 452-55.)

Plaintiffs seek to certify a class of Plan participants and, ultimately, declaratory relief, reformation of the trust, and damages. (Compl.§ XIV.)

**Discussion**

**I. Standard of Review on a Motion to Dismiss**

On a Fed.R.Civ.P. 12(b)(6) motion to dismiss, the Court must assess the legal feasibility of the Complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). Dismissal is appropriate where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A complaint withstands the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 556) (further noting that plausibility lies somewhere between allegations that are "merely consistent" with liability and a "probability requirement"); *see also Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir.2009) (citing *Iqbal* 129 S.Ct. at 1949) ("In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").

**\*4** The Court accepts Plaintiffs' factual allegations as true, but need not accord the same deference to legal conclusions. *Iqbal,* 129 S.Ct. at 1949-150 (citing *Twombly,* 550 U.S. at 555). To the extent documents referenced in a complaint contradict a plaintiff's conclusory allegations, the Court is not required to accept those allegations as true. *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295-96 (9th Cir.1998).

**II. Judicial Notice**

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246994 (W.D.Wash.), 47 Employee Benefits Cas. 2505
(Cite as: 2009 WL 3246994 (W.D.Wash.))

When deciding a motion to dismiss, a court may "generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir.2007). Consistent with Fed.R.Evid. 201(b), a court may take judicial notice of facts that are "not subject to reasonable dispute," as well as documents that are referred to in the complaint, that are central to plaintiff's claims, and whose authenticity is undisputed. *See, e.g., Branch v. Tunell,* 14 F.3d 449, 454 (9th Cir.1994), *overruled on other grounds by Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1127 (9th Cir.2002). A court may also take judicial notice of public documents filed with the SEC, *Metzler Inv. GMBH v. Corinthian Colleges, Inc.,* 540 F.3d 1049, 1064 n. 7 (9th Cir.2008), records and reports of administrative bodies, *Mack v. S. Bay Beer Distrib.,* 798 F.2d 1279, 1282 (9th Cir.1986), *overruled on other grounds by Astoria Fed. Sav. and Loan Ass'n v. Solimino,* 501 U.S. 104, 110-11 (1991), and conference call transcripts, *In re Pixar Sec. Litig.,* 450 F.Supp.2d 1096, 1100 (N.D.Cal.2006).

Defendant Killinger moves for judicial notice of several documents and Plaintiffs do not object. (Dkt. No. 263; Dkt. No. 288 at 69.) The Court takes judicial notice of various SEC filings (Davis Decl., Exs. A, B, C, E, G, L, N, O), public records (*Id.,* Exs. P, Q), and transcripts of WaMu conference calls and presentations (*Id.,* Exs. D, F, H, I, J, K, M). The Court does not draw any inferences in favor of either party on the basis of judicially noticed facts.

**III. ERISA Fiduciary Status**

"In every case charging breach of ERISA fiduciary duty ... the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich,* 530 U.S. 211, 226 (2000). Under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), an individual is a plan fiduciary "to the extent" she exercises discretionary control over the management or administration of the plan. *See also* 29 C.F.R. § 2509.75-8 (2009) (Answer to Question D-4) ("For example, the board of directors may be responsible for the selection and retention of plan fiduciaries ... their responsibility, and, consequently, their liability, is limited to the selection and retention of fiduciaries.").

**\*5** Courts must, therefore, distinguish between actions taken by a plan sponsor in its settlor capacity from ones taken in a fiduciary capacity. *Lockheed Corp. v. Spink,* 517 U.S. 882, 890 (1996) (sponsor was acting in its settlor capacity when amending the terms of a pension benefit plan); *Hughes Aircraft Co. v. Jacobsen,* 525 U.S. 432, 444 (1999) ("ERISA's fiduciary requirement simply is not implicated where Hughes, acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts...."). The Court engages in a "functional" inquiry when determining whether an individual is a fiduciary. *Kayes v. Pac. Lumber Co.,* 51 F.3d 1449, 1459 (9th Cir.1995) (citing *Mertens v. Hewitt Assocs.,* 508 U.S. 248 (1993)).

Plan fiduciaries must discharge their duties "solely in the interest of the participants and beneficiaries" and "with the care, skill, prudence, and diligence ... that a prudent man acting in a like capacity" would use. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1); *see also Wright v. Or. Metallurgical Corp.,* 360 F.3d 1090, 1093-94 (9th Cir.2004). Under ERISA § 409(a), 29 U.S.C. § 1109(a), fiduciaries are personally liable for plan losses resulting from breaches of their duties.

Because ERISA liability turns on Defendants' fiduciary

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246994 (W.D.Wash.), 47 Employee Benefits Cas. 2505
(Cite as: 2009 WL 3246994 (W.D.Wash.))

status, the Court analyzes the Complaint as it implicates each of the four groups of Defendants.

**IV. PIC/PAC: The Committee Defendants**

The Committee Defendants challenge Counts One, Four, and Five of the Complaint; all other Defendants join their challenge to Count One. (*See* Dkt. No. 265 at 14; Dkt. No. 258 at 6; Dkt. No. 262 at 5.) Though Defendants are not entitled to dismissal of Counts One and Four, Count Five must be dismissed with respect to the Committee Defendants.

**a. Count One: WaMu Plan Design**

Count One asserts that PIC members failed to act in accordance with their duties of prudence and loyalty by preserving WaMu securities as an option for Plan investment. (¶¶ 391-410.) Defendants do not dispute that PIC was a named fiduciary of the Plan. (*See* Plan § 12.1(c).) Defendants argue that, because the Plan expressly contemplated the creation of the Stock Fund, PIC members could not have acted as fiduciaries while preserving WaMu securities as an investment option. (Dkt. No. 265 at 16.) In their view, the Complaint is flawed because it seeks to impose liability for decisions reached by individuals acting in a settlor capacity, not a fiduciary one. *See, e.g., Hughes Aircraft,* 525 U.S. at 444.

Fiduciaries must act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of" ERISA. 29 U.S.C. § 1104(a)(1)(D). Defendants point to other instances where courts have dismissed breach of fiduciary duty claims arising from plans whose language required a particular investment be offered. (Dkt. No. 265 at 17.) For instance, in *Crowley,* the

court dismissed a similar claim where an ERISA plan made it "abundantly clear" that the participants would be able to select from the investment options "including" the company's stock. *Crowley v. Corning, Inc.,* No. 02-cv-6172, 2004 WL 763873, at *7 (W.D.N.Y. Jan. 14, 2004); *see also In re McKesson HBOC, Inc. ERISA Litig.,* 391 F.Supp.2d 812, 832 (N.D.Cal.2005) (plan provided a company's contributions to participants' retirement funds "shall be invested" in the corporation's stock); *In re Citicorp ERISA Litig.,* No. 09-civ-9790, 2009 U.S. Dist. LEXIS 78055, at *25 (S.D.N.Y. Aug. 31, 2009) (dismissing claims where the "pellucid language" of the plan required a stock fund be comprised of a corporation's common stock). In contrast, the *WorldCom* court denied dismissal of a prudence claim against plan fiduciaries because:

**\*6** [e]ven in the context of an ESOP, which is designed to offer employees the opportunity to solely invest in the employer's stock, a fiduciary may be liable for continuing to offer an investment in the employer's securities, at least where the plaintiff can show that circumstances arose which were not known or anticipated by the settlor of the trust that made a continued investment in the company's stock imprudent.

*In re WorldCom, Inc. ERISA Litig.,* 263 F.Supp.2d 745, 764 (S . D.N.Y.2003) (citing *Moench v. Robertson,* 62 F.3d 553, 571 (3d Cir.1995)); *see also In re J.D.S. Uniphase Corp. ERISA Litig.,* No. C 03-04743, 2005 WL 1662131, at *6 (N.D.Cal. Jul. 14, 2005) (dismissal inappropriate even where plan articulated availability of several mutual funds as well as a company stock fund); *Shanehchian v. Macy's, Inc.,* No. 1:07-cv-00828, 2009 WL 2524562, at *5 (S.D.Ohio Aug. 14, 2009) (denying dismissal where defendants argued plans gave no discretion to remove the company stock fund from the list of investment funds).

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246994 (W.D.Wash.), 47 Employee Benefits Cas. 2505
(Cite as: 2009 WL 3246994 (W.D.Wash.))

Defendants assert the *Crowley* line of cases is consistent with *Wright,* where the Ninth Circuit affirmed dismissal of a claim that plan fiduciaries violated ERISA's diversification requirement by failing to allow participants to sell higher percentages of employer securities. (Dkt. No. 305 at 12 (citing *Wright,* 360 F.3d at 1100).) The *Wright* plaintiffs' claims that their plan should have been more diversified ran contrary to the ERISA provision exempting Eligible Individual Account Plans ("EIAPs") from diversification requirements. 360 F.3d at 1097-99 (Plaintiffs sought to capture "a rise in the share value following a major, though not necessarily unique, corporate development."). The present Complaint does not, by its terms, advance a diversification claim. Plaintiffs' allegations more closely reflect those in *Syncor,* where plaintiffs asserted a claim for breach of fiduciary duty based on the selection of company stock as an investment option. *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1102 (9th Cir.2008) (differentiating prudence claims based on the selection of investments from diversification claims). In rejecting the lower court's entry of summary judgment, the Ninth Circuit observed an ERISA violation could arise where defendants participated in an illegal scheme while simultaneously preserving those aspects of a plan that invested in Syncor stock. *Id.* at 1102-03.

Like the plans in *Crowley* and *WorldCom*-and every other ESOP plan for that matter-the Plan here specifically contemplates that employees will have the opportunity purchase the company's securities. The Plan provides the "ESOP is designed to invest primarily in qualifying employer securities ..." through the Stock Fund. (Plan § 1.1.) The Court is not persuaded that the language creating the ESOP is enough to immunize Defendants from any potential liability as fiduciaries. Rather, the relevant question for the Court's functional inquiry is whether PIC had any discretionary authority to remove the WaMu securities option after it had been created. *See Kayes,* 51 F.3d at 1459. There is no question that PIC had the authority to "review, select or remove, and monitor investment funds and fund managers." (Plan § 12.2(c)

(ii).) While Defendants would have the Court read this provision to mean PIC only had the authority to replace non-ESOP funds, another section of the Plan suggests that the term "investment fund" encompasses the WaMu Stock Fund. Specifically, the section of the Plan describing initial elections provides: "[t]he Participants in the Plan are allowed to allocate contributions to their accounts to various investment funds, *including* a fund (the "Company Stock Fund") which will be invested primarily in the common stock of the Company...." (*Id.* § 10.3 (emphasis added).) Plaintiffs' allegation that "[n]othing in the Plan required the WaMu Company Stock Fund as an investment option or limited the ability of the Plan fiduciaries to remove the options" appears sufficient in light of the Plan's embracive use of "investment fund." (¶ 40.) The terms of the Plan create some ambiguity as to whether the PIC's discretion to select funds would include the selection of the Company Stock Fund. Resolving this ambiguity in Plaintiffs' favor at the motion to dismiss phase, the Court finds a plausible claim that PIC members were fiduciaries with the discretion to remove WaMu securities from the menu of investment options.

**\*7** Because the Court can settle the question on the language of the Plan, it need not reach the more difficult issue of whether a fiduciary must disregard the unequivocal language of a plan in order to protect participants. *See* Amended Brief of the Secretary of Labor as Amicus Curiae at 34, *In re Enron Corp.,* No. 4:01-cv-3913 (S.D.Tex. Sept. 03, 2002) (Department of Labor arguing "even if the Plan purported to limit the fiduciaries' discretion to some extent ... Defendants had a duty to disregard the plan where following it would be an imprudent act.").

**b. Count One: ERISA Section 404(c) Safe Harbor**

Defendants also claim that Claim One-and by extension all claims-fails by virtue of a statutory exception for

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 8

Slip Copy, 2009 WL 3246994 (W.D.Wash.), 47 Employee Benefits Cas. 2505
(Cite as: 2009 WL 3246994 (W.D.Wash.))

participant-directed investments. (Dkt. No. 265 at 21.) Pursuant to ERISA § 404(c), 29 U.S.C. § 1104(c), in situations where participants control the funds in their accounts, "no person who is otherwise a fiduciary shall be liable ... for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise or control." To fall within the ambit of the safe harbor, a defendant must demonstrate (1) participants could choose from a broad range of investment alternatives, (2) participants could give investment instructions with reasonable frequency, and (3) participants had access to sufficient information to make informed decisions. *See* Nell Hennessy & Frank Daniele, *ERISA Fiduciary Law* 406 (Susan P. Serota & Frederick Brodie eds.2006) (citing 29 C.F.R. § 2550.404c-1).

In most cases, defendants raise § 404(c) as an affirmative defense and are not entitled to a Rule 12(b)(6) dismissal based on the defense. *See In re Sprint Corp. ERISA Litig.,* 388 F.Supp.2d 1207, 1234 (D.Kan.2004) ("Defendants will need to prove they are entitled to invoke this defense on the facts of this case."); *WorldCom,* 263 F.Supp.2d at 764 n. 12 ("the existence of independent control is an affirmative defense and, in any event, a question of fact ..."); *In re Enron Corp. Sec., Derivative & ERISA Litig.,* 284 F.Supp.2d 511, 578-79 (S.D.Tex.2003). However, when a plaintiff's complaint includes allegations that seek to defeat a potential affirmative defense and when those allegations demonstrate the defense's validity, the defendant may test the validity of the defense. *See* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1276 (3d ed.2004) (collecting cases); *see also Hecker v. Deere & Co.,* 556 F.3d 575, 588 (7th Cir.2009) ("Plaintiffs here chose to anticipate the § 1104(c) defense in their Complaint explicitly and thus put it in play.").

In *Hecker,* participants had the option of investing in the fiduciaries' selected funds and in 2,500 other available funds through BrokerageLink. 556 F.3d at 587. The *Hecker* plaintiffs complained the defendants failed to disclose the fee arrangements for each of the available investments. *Id.* at 584-85. The Seventh Circuit determined that the § 404(c) defense could serve as the basis for dismissal because the funds available through BrokerageLink had fees ranging from 0.07% to 1.00% and this range of fees made it implausible to succeed on a claim that the plan presented an insufficient number of investment options. *Id.* at 589-90 (declining to decide the question of whether the safe harbor applies to the selection of investment options).[FN3] Other circuits and the Department of Labor have determined that the § 404(c) safe harbor does not apply to the fiduciary's selection of investment options. *See DiFelice v. U.S. Airways, Inc.,* 497 F.3d 410, 418 n. 3 (4th Cir.2007) ("... although section 404(c) does limit the fiduciary's liability for losses that occur when participants make poor choices from a satisfactory menu of options, it does not insulate a fiduciary from liability for assembling an imprudent menu in the first instance."); Final Regulation Regarding Participant Directed Individual Account Plans (ERISA Section 404(c) Plans), 57 Fed.Reg. 46906, 46924 n. 27 (Oct. 13, 1992) ("limiting or designing investment options ... is a fiduciary function ..."); *Langbecker v. Elec. Data Sys. Corp.,* 476 F.3d 229, 310 (5th Cir.2007) (noting the narrow construction of "resulting from" language in § 404(c)).

> FN3. When denying the petition for rehearing and en banc review, the Seventh Circuit was careful to note that the *Hecker* plaintiffs did not challenge the appropriateness of "any of the 26 investment alternatives." *Hecker v. Deere & Co.,* 569 F.3d 708, 711 (7th Cir.2009). Thus, the *Hecker* opinion was not to be read "as a sweeping statement that any Plan fiduciary can insulate itself from liability by the simple expedient of including a very large number of investment alternatives...." *Id.*

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246994 (W.D.Wash.), 47 Employee Benefits Cas. 2505
(Cite as: 2009 WL 3246994 (W.D.Wash.))

**\*8** The two significant similarities between *Hecker* and this matter appear to be that Plaintiffs have included a response to a potential § 404(c) attack in the body of the Complaint and Plan participants had access to BrokerageLink. (¶¶ 381-86.) These similarities are insufficient to justify dismissal based on § 404(c) at this time. The critical distinction is that Plaintiffs here challenge the decision to preserve investment alternatives, not the administrative fees associated with any particular alternative. *See Hecker,* 569 F.3d at 711. The Complaint alleges that fiduciaries failed to "ensure effective participant control by providing complete and accurate material information to participants regarding WaMu stock." (¶ 384; *see also* ¶ 349.) Before the Court can decide the applicability of § 404(c), it must engage in the factual inquiry of whether the third prong of the defense has been satisfied. Dismissal based on § 404(c) would be inappropriate at this time.

**c. Count Four: PAC**

Defendants also move to dismiss Count Four, which Plaintiffs assert against PAC for failure to provide accurate information to plan participants. (Dkt. No. 265 at 25; Dkt. No. 305 at 15.) The Ninth Circuit recognizes that "ERISA imposes upon fiduciaries a general duty to disclose facts material to investment issues." *Cal. Ironworkers Field Pension Trust v. Loomis Sayles & Co.,* 259 F.3d 1036, 1045 (9th Cir.2001) (no duty to disclose purchase of collateralized mortgage obligations on behalf of trust). In deciding that ERISA fiduciaries had an affirmative obligation to disclose information concerning a proposed amendment to a plan, the Ninth Circuit reasoned "that once an ERISA fiduciary has material information relevant to a plan participant ... it must provide that information whether or not it is asked a question." *Bins v. Exxon Co. U.S.A.,* 189 F.3d 929, 939 (9th Cir.1999). The employer-fiduciaries in *Bins* could satisfy this obligation by informing participants that management "is seriously considering changing benefits"

and describing the proposed changes. *Id.; see also Mathews v. Chevron Corp.,* 362 F.3d 1172, 1180-81 (9th Cir.2004) (analyzing disclosure related to benefit enhancements under "serious consideration" standard); *Wayne v. Pac. Bell,* 238 F.3d 1048, 1055 (9th Cir.2001) (employer-fiduciary had "duty not to actively misinform plan participants" about changes in benefits once proposed changes were given "serious consideration"); *Barker v. Am. Mobil Power Corp.,* 64 F.3d 1397, 1403-04 (9th Cir.1995) (breach of prudent man standard for fiduciary to misleadingly represent that funds would be available upon participants' retirement). The Third Circuit has affirmed dismissal of an ERISA claim that defendants failed to inform participants about the imprudence of holding company stock because the alleged fiduciaries "did not have a duty to give investment advice or to opine on the stock's condition." *Edgar v. Avaya, Inc.,* 503 F.3d 340, 350 (3d Cir.2007) (internal quotations omitted) (no duty to disclose adverse corporate developments such as delivery difficulties prior to public earnings announcement).

**\*9** Under the Plan, PAC had the authority over ministerial management issues and could make decisions on matters such as "efficient administration," eligibility determinations, benefit calculations, authorization of disbursements, and regulatory compliance. (¶ 95; Plan § 12.2(b).) Based on these responsibilities, Plaintiffs present two parallel tracks for establishing PAC's fiduciary status. Only one is viable on the facts alleged.

First, Plaintiffs allege that PAC members were fiduciaries pursuant to ERISA § 101(a), 29 U.S.C. § 1021(a), which describes the disclosure requirements plan administrators must fulfill. (¶ 97.) PAC members allegedly ran afoul of their disclosure obligations by incorporating "WaMu's misleading SEC filings" in fiduciary communications. (*Id.*) Courts have recognized that the act of incorporating SEC filings into Plan communications may give rise to ERISA liability. *See In re First Am. Corp. ERISA Litig.,*

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246994 (W.D.Wash.), 47 Employee Benefits Cas. 2505
(Cite as: 2009 WL 3246994 (W.D.Wash.))

No. 07-01357, 2008 WL 5666637, at *6-7 (C.D.Cal. Jul. 14, 2008) (collecting cases). Plaintiffs' Complaint thus presents a straightforward claim for breach of the duty of disclosure arising from PAC's fiduciary duty to disseminate Plan documents.

Second, Plaintiffs allege that PAC members were de facto fiduciaries "in that they exercised discretionary authority or discretionary control respecting management of the Plan." (¶ 98.) The common theme in Ninth Circuit law is that the duty to disclose arises in the context of a contemplated change in the nature or management Plan benefits. *See Bins,* 189 F.3d at 939 (duty to disclose change in benefits); *Mathews,* 362 F.3d at 1180-81 (benefit enhancements); *Wayne,* 238 F.3d at 1055 (changes in benefits); *Barker,* 64 F.3d at 1403-04 (participant fund availability). The Complaint, however, posits a theory of disclosure well beyond that which is established in law. Plaintiffs suggest that, by virtue of a de facto fiduciary status, PAC had an obligation to engage in a broad discussion of WaMu's stock health. (¶ 363; *see also* ¶¶ 267-74 (information PAC member Longbrake should have disclosed earlier).) For instance, Plaintiffs allege PAC Defendants "failed to provide the Plan's participants with complete and accurate information regarding the Company's unduly large and risky exposure to subprime and other highly risky loans ..." and that, as a result, participants could not understand the risk inherent in their investment in WaMu stock. (¶¶ 366-67; ¶¶ 434-35.) This broader view of disclosure is problematic because the Complaint fails to allege any predicate facts that might establish PAC's de facto fiduciary status. Without any such allegations, the Court cannot infer PAC had a duty to disclose information beyond the type imposed by *Bins. See, e.g., Avaya,* 503 F.3d at 350.

To the extent Count Four asserts a disclosure claim based on PAC's statutorily-required disclosure obligations, the claim survives dismissal. However, Plaintiffs have failed to allege PAC's de facto fiduciary status beyond what is

provided for in the Plan. Allegations that PAC ought to have disclosed based on a de facto fiduciary responsibility must be dismissed.

**d. Count Five: Co-Fiduciary Liability**

**\*10** The Committee Defendants are entitled to dismissal of Plaintiffs' co-fiduciary claim. (*See* Dkt. No. 265 at 28.) Under ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3), a fiduciary is liable as a co-fiduciary if he (1) knowingly participates in or conceals another fiduciary's breach, (2) enables another fiduciary's breach, or (3) had knowledge of a breach and failed to take steps to remedy it. While PIC and PAC are referenced in Count Five, all the allegations in those paragraphs refer to PIC and PAC as the offenders for the underlying breach, and not as participants or enablers of another party's breach. (¶¶ 440-51.)

Plaintiffs claim the Court should infer co-fiduciary status from the PIC and PAC's composition of high-ranking employees. (Dkt. No. 288 at 59.) This section of the Complaint, however, treats all Defendants as an undifferentiated mass of wrongdoers. In other words, there are no articulated facts from which the Court can infer that PIC or PAC were guilty of failing to remedy, participating in, or enabling another fiduciary's breach. (*See* ¶¶ 440-51.) This section of the Complaint presents the type of conclusory allegations that are expressly prohibited by Rule 8, *Twombly,* and *Iqbal.* The Court grants PIC and PAC's motion with respect to Count Five.

**V. Director Defendants**

Although Plaintiffs' complaint names the Director Defendants in Counts One, Two, and Five, Plaintiffs wish to voluntarily dismiss the allegations against the Director

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246994 (W.D.Wash.), 47 Employee Benefits Cas. 2505
(Cite as: 2009 WL 3246994 (W.D.Wash.))

Defendants in Count One. (Dkt. No. 288 at 49.)

**a. Count Two: Failure to Monitor**

When an individual has the authority to appoint a fiduciary, that individual is a fiduciary with respect to the appointment. *See, e .g., Batchelor v. Oak Hill Med. Group,* 870 F.2d 1446, 1448 (9th Cir.1989) (recognizing duty to monitor selection and retention of fiduciaries). The appointing fiduciary retains the obligation to "[a]t reasonable intervals," evaluate the performance of the appointees "to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan." 29 C.F.R. § 2509.75-8 at FR-17.

By virtue of their ability of appoint members of PIC and PAC, the HR Committee concedes its members were fiduciaries to the extent of their appointment and removal powers. (Dkt. No. 258 at 19 (recognizing duty to appoint).) Plaintiffs maintain the claim arises out of the Director Defendants insufficient monitoring related to their (1) failure provide appointees with information that was critical to the viability of the WaMu Stock Fund and (2) failure to remove appointees who failed to faithfully discharge their duties. (Dkt. No. 288 at 63.)

First, with respect to Defendants' failure to provide information to PIC and PAC, Plaintiffs have stated a claim. Courts recognize that this type of monitoring claim is fact-intensive requiring a significant amount of discovery. *See Lingis v. Motorola,* No. 03 C 5044, 2009 WL 1708097, at *17 (N.D. Ill. June 17, 2009) (citations omitted); *Syncor,* 351 F.Supp.2d at 986. Plaintiffs claim the Director Defendants failed to ensure PIC and PAC "appreciated the true extent of WaMu's highly risky and inappropriate business practices." (¶ 418.) Accepted as true, these allegations of fact give rise to a plausible claim.

**\*11** Second, Plaintiffs' allegation that the Director Defendants failed to timely review and remove appointees does not state a claim. Courts have held that a monitoring claim based on a failure to periodically review appointed fiduciaries must allege facts relating to the periodic review process. *See In re Capilene Corp.,* No. C-03-1685, 2005 WL 1431506, at *6 (N.D.Cal. Mar. 31, 2005). Plaintiffs include no allegations of fact about the Board's procedures with respect to appointment and retention and merely argue this duty must have been breached by the precipitous fall of WaMu's stock price. (Dkt. No. 288 at 56; *see also* Compl. ¶ 418 .) While the Court is careful to note Defendants should not be compelled to plead a factual negative, the Complaint offers no insight into how the HR Committee's appointment and removal process was deficient. Instead, it merely observes that, per the Investment Committee's charter, the HR Committee was to receive reports on the status of the Plan twice a year. (¶ 76.) They do not make any claims about the type of information that the Directors reviewed or should have reviewed when supervising PIC and PAC, nor do they make any claims about individuals whose "performance was inadequate" and who should have been removed. (¶ 418.) The inference that all PIC and PAC members were necessarily under-supervised as a result of the decline in WaMu's stock price falls short of the facial plausibility standard articulated in *Iqbal.*

To the extent Plaintiffs' claim is based on the Director Defendants' failure to provide PIC and PAC with the necessary information to make informed decisions, Defendants' motion is denied. However, Plaintiffs' allegations concerning the adequacy of the HR Committee's supervisory role are dismissed.

**b. Count Five: Co-Fiduciary Liability**

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246994 (W.D.Wash.), 47 Employee Benefits Cas. 2505
(Cite as: 2009 WL 3246994 (W.D.Wash.))

As the Court has noted, a fiduciary may be liable as a co-fiduciary if she (1) knowingly participates in or conceals another fiduciary's breach, (2) enables another fiduciary's breach, or (3) had knowledge of a breach and failed to take steps to remedy it. *See* 29 U.S.C. § 1105(a). Unlike the co-fiduciary claims asserted against PIC and PAC, the claim against the Director Defendants makes direct claims of enabling and knowing participation. (¶¶ 447-48.) In particular, Plaintiffs allege "the HR Committee ... knowingly participated in the breaches of the Prudence Defendants because ... they had actual knowledge of the facts that rendered WaMu stock an imprudent retirement investment." (¶ 447.) These allegations concerning Defendants' knowledge state a claim against the Director Defendants as true co-fiduciaries rather than in their capacity as direct fiduciaries. Defendants' motion is denied with respect to Count Five.

**VI. Kerry Killinger**

Defendant Killinger challenges the Complaint on the basis (1) it fails to allege facts that would make him a de facto fiduciary and (2) the facts alleged to not constitute breaches of the various claims. Because the Court finds Plaintiffs have failed to allege facts that would make Killinger a fiduciary, it need not reach the latter issue.

**\*12** Under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), an individual is a plan fiduciary "to the extent" she exercises discretionary control over the management or administration of the plan. Plaintiffs assert Killinger acted as a de facto fiduciary because of his position as Chairman of the Board and CEO, his attendance at HR Committee meetings and his statements to Plan participants. (Dkt. No. 288 at 70-81; Compl. ¶¶ 71-74.)

In *WorldCom,* the court dismissed claims by plaintiffs that

SEC filings and a Board's inherent authority over inferior fiduciaries imposed fiduciary status on the entire Board of Directors. 263 F.Supp.2d at 760-61 (citing *Pegram,* 530 U.S. at 225-26). The court rejected plaintiffs' argument because "it would make any supervisor of an ERISA fiduciary also an ERISA fiduciary." *Id.* As in *WorldCom,* Plaintiffs here allege that WMI's duty to monitor was "necessarily exercised" by the Board, including Killinger. (Dkt. No. 288 at 71.) This appears to be precisely the sort of fiduciary-by-extrapolation analysis the court in *WorldCom* rejected. An executive title alone does not impose de facto fiduciary status on an individual and it is insufficient to allege that Killinger was a fiduciary merely because he was the Chief Executive Officer.

Killinger's attendance at HR Committee meetings, from which the Court is urged to draw "a more than reasonable inference that Killinger's position ... gave him a powerful and influential role" over the HR committee, is also insufficient to establish fiduciary status. (Dkt. No. 288 at 71.) Plaintiffs make no allegation that Killinger actually exercised any discretionary authority at those meetings over either the Plan or the Plan's management. Indeed, there are no allegations Killinger did anything at all at those meetings. (¶ 73.)

Plaintiffs also claim Killinger acted as a fiduciary by virtue of the statements he made to the Company and the public as a whole. (Dkt. No. 288 at 72.) When pressed to identify statements made to Plan participants in a fiduciary capacity, Plaintiffs point to just one paragraph complaint where Killinger made broad statements about the Company's liquidity and core business strength. (*Id.* (citing ¶ 368).) The cited statement, a platitude about WaMu's "valuable and strong" brand, is not alleged to have been made under any circumstances that would lead employees to believe Killinger was discussing the Plan. (¶ 368.) In their response, Plaintiffs do not argue that the numerous statements in the Complaint related to Killinger's certification of SEC filings or his statements to

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246994 (W.D.Wash.), 47 Employee Benefits Cas. 2505
(Cite as: 2009 WL 3246994 (W.D.Wash.))

the press could have been directed at Plan participants. (*See, e.g.,* ¶¶ 282, 285, 286, 288, 291, 293, 300, 307, 313, 318, 333.) There are no factual allegations from which the Court can infer that Killinger's "direct and indirect" communications with employees could have been received as Plan-related communications. (¶ 360.) Last, Plaintiffs' reliance on *Varity* is misplaced because the employee at issue in that case was already a plan fiduciary by virtue of his other discretionary tasks. *Varity Corp. v. Howe,* 516 U.S. 489, 502 (1996).

**\*13** The Court is aware that it must look to the sum of the allegations against a defendant when analyzing potential fiduciary status; nevertheless, none of the categories of allegations against Killinger weigh in favor of finding sufficient de facto authority. Defendants are correct that Plaintiffs have failed to allege facts that would indicate Killinger held any discretionary authority over the Plan or its managers. As such, all claims against Killinger are dismissed.

**VII. JMPC**

Chase moves to dismiss all claims against it arguing that the purchase of WMB could not have included the transfer of WMI's fiduciary liability.<u>FN4</u> The Court agrees with JPMC that Plaintiffs have not advanced a plausible theory of succesorship.

> FN4. In their initial motion, JPMC asserted Plaintiffs should have to join WMI under Fed.R.Civ.P. 19. (Dkt. No. 260 at 10-12.) However, at oral argument, counsel for Chase indicated they no longer challenged the Complaint for failure to join. The Court therefore does not address the Rule 19 challenge.

**a. FDIC's Authority to Transfer Liability**

JPMC argues that it could not be a successor under the purchase and assumption agreement because (1) the FDIC could not have had the authority to transfer the liability given its limited authority over bank holding companies like WMI and (2) the terms of the agreement with the FDIC provide that JPMC only assumed liabilities related to WMB. (Dkt. No. 260 at 13-16.) Plaintiffs respond that that they "do not argue Chase accepted liability of WMI's violations via Chase's Purchase and Assumption Agreement or that the FDIC otherwise transferred that liability." (Dkt. No. 288 at 83 n. 10.) Plaintiffs' footnote belies much of the language in the Complaint. (*See* ¶ 19 ("Pursuant to the Purchase and Assumption Agreement, JPMCNA also specifically assumed 'all liabilities associated with any and all employee benefit plans,' including the Plan at issue in this case."); ¶¶ 42-44 ("... the Purchase and Assumption Agreement makes clear that liability related to the Plan (including liability for fiduciary breaches alleged herein) went to JPMCNA."); ¶ 70 ("Because it assumed WaMu's Plan-related liability in the Purchase and Assumption Agreement ... JPMCNA is fully liable for WaMu's breaches of fiduciary duty, as alleged herein.").)

Allowing Plaintiffs to proceed against JPMC runs the risk of expanding the FDIC's jurisdiction well beyond its statutory reach. The statute that empowered the FDIC to take WaMu Bank into receivership refers only to failed "depository institutions." 12 U.S.C. § 1821(d)(2)(A)(i). The Ninth Circuit has noted that a purchase agreement for an institution in FDIC receivership could not "apportion the assets and liabilities of independent corporate entities, just because those entities are also assets of the failed institution." *W. Park Assocs. v. Butterfield Sav. & Loan Ass'n,* 60 F.3d 1452, 1459 (9th Cir.1995). JPMC purchased WMB, the depository institution and subsidiary of WMI, from the FDIC. (Mattson Decl., Ex. C.) If the Court permitted Plaintiffs' claims against JPMC, it would

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246994 (W.D.Wash.), 47 Employee Benefits Cas. 2505
(Cite as: 2009 WL 3246994 (W.D.Wash.))

be functionally granting FDIC powers beyond what Congress contemplated. Additionally, the Court would be completely ignoring the distinction in corporate form between WMI and WMB. (*See* Dkt. No. 302 at 8-9.) It is therefore inappropriate to allow claims to proceed against JPMC on the theory it assumed fiduciary liability by purchasing WMB.

**b. Common Law Successorship**

**\*14** In the alternative, Plaintiffs argue JPMC inherited WMI's liability because it is a common law successor to WaMu. (Dkt. No. 288 at 83.) Whether a company can be liable based upon a common law theory of inherited liability for breach of ERISA fiduciary duties is a question of first impression, though the Court does not believe it is a close one in this case. (*See* Dkt. No. 288 at 82 (acknowledging "ERISA does not set forth principles governing successor liability).) Plaintiffs' argument improperly conflates contract-dependent successor liability with successor fiduciary liability.

Courts have recognized that a company can be held liable for delinquent contributions to a benefit plan owed by a predecessor. James F. Jorden, et al., *Handbook on ERISA Litigation* § 8.01[D] [1] (3d ed.2009) (citing *Haw. Carpenters Trust Funds v. Waiola Carpenter Shop Inc., 823 F.2d 289, 294 (9th Cir.1987)*). The *Hawaii Carpenters* case did not involve allegations of liability based on the improper conduct of its predecessor. The functional test applied by the *Hawaii Carpenters* court and proposed by Plaintiffs looks to issues such as the continuity in work force and plant management. 823 F.3d at 294 (citations omitted).[FN5] While compelling in the context of issues like plan contributions, there is no reason to think the test encompasses the myriad of concerns present in the context of liability based on the duties of prudence and loyalty. The Court thus declines to apply the test in this matter.

FN5. The Court's analysis asked: "[whether] (a) there has been a substantial continuity of the same business operations; (b) the new employer uses the same plant; (c) the same or substantially same work force is employed; (d) the same jobs exist under the same working conditions; (e) the same supervisors are employed ... (g) and the same ... service is offered." *Id.*

Plaintiffs' final argument for extending liability lies in an appeal to ERISA's broad remedial purpose. (Dkt. No. 288 at 89.) In *Steinbach v. Hubbard,* the Ninth Circuit recognized that extending liability to successors "will sometimes be necessary in order to vindicate important statutory policies" and concluded successor liability could exist under the Fair Labor Standards Act. 51 F.3d 843, 845 (9th Cir.1995). But Plaintiffs ignore the statutory policies embodied in ERISA's plain terms. ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), limits a fiduciary's liability "to the extent" she exercises discretionary control over a plan. The provision imposing liability speaks only of fiduciaries. 29 U.S.C. § 1109(a). In addition, ERISA § 409(b), 29 U.S.C. § 1109(b), provides that fiduciaries are not liable for breaches "committed before he became a fiduciary or after he ceased to be a fiduciary." (*See also* Dkt. No. 260 at 17.) Read as a whole, these provisions contemplate liability for parties with fiduciary authority for acts completed in that capacity. *See Pegram, 530 U.S. at 226.* Plaintiffs cannot avoid these statutory provisions merely be arguing that they do not allege JPMC was a fiduciary. If anything, the failure to plead JPMC's fiduciary status provides a more compelling rationale for dismissal. An appeal to ERISA's broad purpose cannot override ERISA itself.

Plaintiffs have not put forth a plausible contractual or common law theory of successorship. All claims against JPMC are dismissed. Because it dismisses JPMC on

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3246994 (W.D.Wash.), 47 Employee Benefits Cas. 2505
(Cite as: 2009 WL 3246994 (W.D.Wash.))

Plaintiffs' theory of liability, the Court need not reach the question of whether Plaintiffs have sufficiently alleged WMI's fiduciary status. (*See* Dkt. No. 260 at 18; Dkt. No. 288 at 97.)

### Conclusion

**\*15** Plaintiffs' Complaint presents viable claims against PIC, PAC, and the HR Committee, but falls short of the mark with respect to Defendants Killinger and JPMC. The Court ORDERS as follows: The Committee Defendants' motion (Dkt. No. 265) is DENIED with respect to Count One, GRANTED IN PART AND DENIED IN PART with respect to Count Four, and GRANTED with respect to Count Five. The Director Defendants' motion (Dkt. No. 258) is GRANTED with respect to Count One, GRANTED IN PART AND DENIED with respect to Count Two, and DENIED with respect to Count Five. Defendant Killinger's motion (Dkt. No. 262) and JPMC's motion (Dkt. No. 260) are GRANTED.

The Court will discuss a schedule for submission of class certification motions at the upcoming status conference.

The Clerk is directed to transmit a copy of this Order to all counsel of record.

W.D.Wash.,2009.
In re Washington Mutual, Inc. Securities, Derivative & ERISA Litigation
Slip Copy, 2009 WL 3246994 (W.D.Wash.), 47 Employee Benefits Cas. 2505

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.